## UNITED STATES v. ONE 1935 CHEVROLET COUPÉ.

District Court, D. Maine, S. D.
March 16, 1936.

Edw. J. Harrigan, Asst. U. S. Atty., of Portland, Me.

Francis W. Sullivan, of Portland, Me., for claimant.

PETERS, District Judge.

Hearing was had upon the claim of the General Motors Acceptance Corporation to a Chevrolet automobile which has been decreed forfeited under Rev.St. § 3450 (26 U.S.C.A. § 1156), it having been seized while containing tax-unpaid illicit liquors admittedly deposited in fraud of the revenue laws.

From the evidence it appears that the car in question was sold by a corporation, hereinafter referred to as the "dealer," engaged in the business of selling automobiles; the sale being made by an agent of the dealer to one Edward Smith, who had a record and a well-deserved reputation of being what is commonly called a "bootlegger." In part payment of the price of the new car, Smith turned in an old car owned by him, and was to have

certain terms for the payment of the balance of the purchase price represented by a conditional sales contract which was drawn up by the agent but not signed by Edward Smith, as it was known to the agent that Edward Smith was a bootlegger and had been convicted as such, and that investigation would probably disclose that fact when the proposed conditional sale contract was attempted to be negotiated to a finance company. Consequently, to avoid this embarrassment, the contract was signed by Lewis Smith, a brother of Edward; Lewis Smith having no interest whatever in the matter except to help his brother by enabling him to make a contract and buy a car—something which he otherwise could not have easily accomplished.

Subsequently the dealer, in the regular course of business, sold and assigned the contract to this claimant.

The car went into the possession of Edward Smith, the real owner, and was being used by him when seized. No defense was made to the libel, and a decree of forfeiture followed.

The usual customer's statement, signed by Lewis Smith, giving some of his personal history, was furnished the claimant when it bought the contract, and the claimant also made some inquiries as to his financial responsibility and character, which were found satisfactory, but made no inquiries as to his record or reputation for bootlegging, and, as a matter of fact, he had no such record or reputation.

The claimant asks for remission of the forfeiture and return of the car on the ground that it was an innocent purchaser of the contract acting in good faith—as it undoubtedly was—and without any knowledge of, or reason to anticipate, an illegal use of the car. The claimant also alleges that its interest did not arise out of, and that it was not in any way the subject to, any contract or agreement under which any person having a record or reputation for violating any liquor laws had any right with respect to the vehicle.

These allegations were made in order to bring the claimant within the purview of the Liquor Law Repeal and Enforcement Act, approved August 27, 1935 (49 Stat. 872), under which this relief is asked.

Prior to the enactment of that law, in a case such as this, no relief from the forfeiture could have been had. If a person occupying the position of a chattel mortgagee, as here, saw fit to leave the car in the possession of another, who by his illegal use or acquiescence in an opportunity for illegal use caused its forfeiture, the mortgagee was without remedy after seizure and forfeiture under Rev.St. § 3450, and other persons claiming under him were in no better position.

As was said by Mr. Justice Brandeis in the leading case of United States v. One Ford Coupe, 272 U.S. 321, 47 S.Ct. 154, 155, 71 L.Ed. 279, 47 A.L.R. 1025: "If a forfeiture may be had under section 3450 for such use of a vehicle to evade a tax on illicitly distilled liquor, the interests of innocent persons in the vehicle are not saved." United States v. One Plymouth Coupe (D.C.) 10 F.Supp. 164, and cases cited.

By the act of 1935, however, the court was given a jurisdiction it did not have before to mitigate, in some cases, the somewhat harsh results of the enforcement of the law. Section 204, of the act of 1935 (27 U.S.C.A. § 40a), provides in substance: (a) That whenever a decree of forfeiture is entered in any proceeding in court for the forfeiture of a vehicle for violation of the Internal Revenue laws relating to liquors, "the court shall have exclusive jurisdiction to remit or mitigate the forfeiture."

However, by the express language of the act, in paragraph (b), § 204 (27 U.S.C.A. § 40a(b), the court is not permitted to allow a claim for remission or mitigation of the forfeiture unless the claimant proves,

(1) That he has an interest in the vehicle, acquired in good faith;

(2) That he had at no time reason to believe that the vehicle was or would be used in violation of law;

(3) If it appears that the interest of the claimant "arises out of or is in any way subject to any contract" in which a reputed violator of the liquor laws has a right in respect of the vehicle, the claimant must also show that, in addition to any inquiries as to credit and financial reputation, made before acquiring the interest under the contract, he had also made inquiries of the local enforcement officers as to the reputation of the contracting party as to liquor activities and had been informed that he had no such record or reputation.

988

Clause (3), above referred to, has been criticized on the ground that it practically compels finance companies and others, holding conditional sale contracts covering cars, to make unnecessary and impertinent inquiries as to criminal records of citizens of known high standing and integrity.

■ In my view, the statute is not open to that reproach. It is only in case it appears after the seizure of the car that a party interested in the contract was actually, as a matter of record, a bootlegger, or had a reputation as such, that a claimant is obliged to show that he had made the special inquiries mentioned in the statute.

In the great majority of cases, of course, the seller of the car or his assignee may reasonably and safely assume the risk of bad record or bad repute on the part of the purchaser. In case of any doubt inquiry should be made. But if inquiries are not made and it turns out that the car has been unlawfully used and, for that reason, forfeited, the dealer, or a finance company as his assignee, will not be denied relief on the ground that no inquiries were made, unless it further appears that the person having an interest in the car under the contract (usually the purchaser and user) did actually have the particular record or reputation above mentioned.

■ So, in the instant case, the claimant here, the finance company, before acquiring its interest, made no such inquiries as to the record or reputation of the person who signed the conditional sale contract as purchaser—supposed to be the only person interested—but is not, for that reason, precluded from seeking relief from the forfeiture of the car, because the answer to any such inquiries would have shown no criminal record and no reputation in connection with illicit liquor activities.

■ It does not follow, however, that the wholly justified forfeiture of this car should be remitted. While the court has authority to grant relief from forfeiture, it is not required to do so simply on a showing of jurisdiction under section 204(a) of the act (27 U.S.C.A. § 40a(a), and facts indicating that the claimant is not precluded from obtaining relief by the provisions of section 204(b) of the act (27 U.S.C.A. § 40a(b).

The pivotal feature of this case is the fact that the signer of the contract was a straw man, the actual purchaser being a well-known violator of the liquor laws who intended to use the car (as he did) in his illicit business, and that this was known to the dealer who sold the car to the bootlegger and the contract to the finance company.

It should be said, in justice to the officers of the corporation, the dealer in this case, that knowledge of the irregular transaction is imputed to them and they are charged with it only because it was the knowledge of their agent.

■ It is apparent that the dealer, through its agent, attempted to camouflage the transaction so as to subject the car to the minimum danger of forfeiture for violation of the law, first by setting up a fictitious sale, then by placing the contract in the hands of an innocent third party. This amounts to a plan to obstruct the laws relating to the collection of the revenue.

To remit the forfeiture of the car would crown the plan with success. To deny relief would perhaps cause embarrassment and temporary loss to the claimant, who, however, in such a case, can recoup himself, as he would seem to have a good cause of action in the nature of deceit against the dealer.

I see no evidence of any intention on the part of Congress to enlarge the number of opportunities for defrauding the revenue. Quite the contrary. To mitigate the result of this forfeiture would be to inform dealers that by using straw men on contracts dealers can safely sell cars to bootleggers and avoid subsequent forfeiture by turning over the contracts to innocent third parties. That is an avenue for fraud that should not be opened. The finance companies can easily take precautions against fictitious sales, and the few dealers who would be inclined to such practices will be checked.

■ When it develops, after a seizure and forfeiture such as this, that the sale was actually made to the lawbreaker who caused the forfeiture, and not to the person whose name appears in the contract, the court will disregard the fiction and decide the case on the basis of the true facts.

■ The intent to defraud the United States was established and the offending article properly forfeited. The law prior to the act of 1935 would not permit relief from the forfeiture in such a set of facts, nor does that act place the claimant, in a case like this, in any more favorable situation.

The petition must be denied.