## FEDERAL MOTOR FINANCE v. UNITED STATES.

### No. 10635.

Circuit Court of Appeals, Eighth Circuit.

Feb. 17, 1937.

L. A. Parker, of Des Moines, Iowa (G. E. Brammer, Joseph Brody, Clyde Charlton, and L. Call Dickinson, all of Des Moines, Iowa, on the brief), for appellant.

C. I. Level, Asst. U. S. Atty., of Denison, Iowa (E. G. Moon, U. S. Atty., of Des Moines, Iowa, and Wm. R. Sheridan, Asst. U. S. Atty., of Keokuk, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken from an order entered in a libel proceeding in which one Studebaker Commander 8 coupé, seized while being used by one Harold Tayson to conceal tax-unpaid illicit spirits in fraud of the revenue laws, has been decreed forfeited under Rev.St. § 3450 (26 U.S.C.A. §§ 1156, 1441). The appellant, Federal Motors Finance, a copartnership, intervened in the proceeding to invoke the court's jurisdiction to remit the forfeiture as contemplated by section 204 (a) of the Act of 1935 (27 U.S.C.A. § 40a (a). It alleged that the automobile had been sold about January 18, 1935, by Harter Motors, Inc., automobile dealers in Des Moines, Iowa, to a reputable citizen, a barber named Roy H. Canfield, on the time payment plan and that said Roy H. Canfield had executed a conditional sale contract and a note to his vendor in the amount of $1,121.50 and that the appellant, after careful investigation of the said Roy H. Canfield, had bought and received an assignment of the conditional sale contract and note and was the owner thereof. That said Roy H. Canfield had made payments on the note and there remained a balance of $702 due and owing, which amount exceeded the value of the car. That if said automobile was at any time used for illegal purposes such use was without the knowledge or consent, connivance, or ratification of the appellant. There was a prayer that the automobile be relieved from forfeiture and restored to appellant.

The petition of intervention was heard by the court upon testimony and certain concessions as to facts made by the parties and the court reached the conclusion that the real purchaser of the car from Harter Motors, Inc., was Harold Tayson, who then had a record and reputation for violating liquor laws of the United States and of the state of Iowa, and that the interest in the car asserted by the appellant arose out of and was subject to the contract or agreement with said Tayson. The court found that the appellant failed to show the condi-

tions precedent to remission or mitigation of the decree of forfeiture set forth in the Act of August 27, 1935, section 40a (a) (b) (1) (2) (3), title 27 U.S.C.A., as follows: ·

"(a) *Jurisdiction of court.* Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or air-craft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"(b) *Conditions precedent to remission or mitigation.* In any such proceeding the court shall ·not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or. other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

An order was entered denying the petition of intervention and this appeal has been taken by Federal Motors Finance to reverse the order.

It appears from the evidence that the Des Moines dealer, Harter Motors, Inc., sold the car in question through an agent, George Nelson, who had died before the hearing in the District Court. The agent's negotiations for the sale were had with Harold Tayson, who then had a record of arrests and convictions for violations of the liquor laws, state and federal, and the purchase price of the new car was arrived at with him. He made a down payment and turned in his old car to Harter Motors, Inc., and the terms for the payment of the balance of the purchase price were all set forth in a conditional sales contract and installment note which Tayson observed and complied with up to the time of seizure, but did not sign. The documents, including the conditional sales contract, the installment note, and a purchaser's statement in question and answer form, were drawn up with the name Roy H. Canfield inserted in the blanks left for the name of the purchaser, and the agent, having them in his possession, went with Tayson to the barber shop of Roy H. Canfield and they procured him to sign the papers. Canfield, who had no record or reputation as a liquor law violator, had similarly signed up a note and mortgage to enable Tayson to acquire another Studebaker car the previous year (1934), Tayson having told Canfield that he (Tayson) could not keep a car in his name on account of some judgment against him. A salesman in the employ of Harter Motors, Inc., was present on that occasion in 1934 and Tayson was the one who had received the car and who had made all the payments that were made on it. · Canfield could not remember any conversation occurring at the time the papers covering the car here in question were signed by him. He testified: "Tayson wanted to get a new car * * *" and "I guess. I just signed what they presented to me." The "purchaser's statement" included a declaration that the purchaser named therein (Roy H. Canfield) had an average monthly income of $220, but Canfield said that no one had asked him if he had that income. That, in fact, it had been longer back than the purchase of this car since he had made anywhere near that much. He said that he had never had possession or control of the car, had never registered it for license, had never made any payments on it, and "had nothing to do with it in any way, shape or form."

The car was delivered to Tayson and used by him, but registered for license in the name of Canfield in Iowa and also in Douglas county, Neb., and six of the installment payments were made, as required by the note, at the office of the appellant, the unpaid balance exceeding the value of the car at the time of the seizure.

The appellant bought the note and contract from Harter Motors, Inc., on the date of their execution. An officer of Harter Motors, Inc., communicated to appellant the information contained in the "purchaser's statement" and appellant bought the note and contract in the belief that Canfield was the purchaser of the car and after checking a "Blue Book" credit rating favorable to Canfield and a report upon him by a Credit Reference & Reporting Company. It contacted the Chase Investment Company, another purchaser of automobile paper, which reported that Canfield had a good paying record with it, and it was stipulated that the Chase Company had declined to take the contract here involved because it felt that Canfield did not have any reason to buy a new car on his income and that he had been getting too heavily in debt to make such a purchase. The Chase Company then held the contract signed by Canfield for the purchase of the 1934 Studebaker car. No one in appellant's employ met or communicated with Canfield personally or knew him, so that appellant acquired no information that would lead it to believe that any person other than Canfield was the purchaser of the car. It was stipulated that the person who made the six installment payments at the office of appellant represented himself to be Roy H. Canfield. A damage covered by insurance was occasioned to the car and payment of the insurance was made by check payable to Roy H. Canfield. The check was introduced in evidence and bore the indorsement "Roy H. Canfield." There was a stipulation:

"1. That the salesman, George Nelson, of Harter Motors, Inc., had no authority to sell a motor vehicle on credit under a conditional sale contract and that any such transaction was required to be submitted to C. L. Dickerson, the Sales Manager, for the purpose of passing upon and approving the transaction.

"2. That at all times the said C. L. Dickerson and Harter Motors, Inc., believed and intended that the said Canfield was the only person who would obtain any right or interest in said motor vehicle, and so believing and intending said conditional sale contract was made and entered into by Harter Motors, Inc.

"3. That Harter Motors, Inc., wants to know the identity of the person buying a motor vehicle under conditional sale contract in order that it may determine the purchaser's financial responsibility and whether or not the security for the purchase price, to-wit, the motor vehicle, can be safely intrusted to the purchaser. That if Harter Motors, Inc. had known that someone whose identity was undisclosed was to take possession of said motor vehicle or obtain any interest therein, Exhibits 'A' and 'B' would not have been entered into.

"4. That Federal Motor Finance at all times believed that said motor vehicle was being purchased under the conditional sale contract, Exhibit 'A', by Roy H. Canfield, a barber, with business address at 405 East Fifth Street and home address at 1905 West 20th Street, Des Moines, Iowa, and Federal Motor Finance further believed and intended that the said Canfield was the only person who would obtain any right or interest in said motor vehicle.

"5. That Federal Motor Finance wants to know the identity of the person buying a motor vehicle under conditional sale contract in order that it may determine, before taking over the transaction, the purchaser's financial responsibility and reputation, and whether or not the security for the purchase price, to-wit, the motor vehicle, can be safely intrusted to the purchaser. That if Federal Motor Finance had known that someone whose identity was undisclosed was to take possession of said motor vehicle or obtain any interest therein, Exhibits 'A' and 'B' would not have been purchased by Federal Motor Finance."

The appellant presents (1) that the trial court erred in holding that the car in question was purchased by Harold Tayson and in concluding that the interest in the car asserted by the appellant arose out of or was subject to a contract or agreement with Harold Tayson; and claims (2) that the applicable statute under which appellant prayed remission of forfeiture (27 U.S.C.A. § 40a) does not require a claimant to make inquiry of enforcement officers concerning the reputation of a person unless the claimant knew or should have known that such person had some right or interest in and to the car.

The position of the appellant is that the rules of the law of contracts applicable to sales made to the agent of an undisclosed principal ought to govern the disposition of the case. It observes that, by its terms, the conditional sale contract involved elements of personal trust and confidence reposed by the seller, Harter Motors, Inc., in the purchaser, Roy H. Canfield, and, as stated in its brief, it "relies on the rule that where

property is sold under contract and the personality of the purchaser is an ingredient of the contract, the undisclosed principal of the purchaser is not a party to the contract and acquires no rights thereunder" and "the principal can not sue where terms of the contract exclude him or where the contract is solely with the agent personally." The contention then proceeds that the liquor law violator Tayson acquired no rights to the car and so the appellant's interest in the car did not arise out of and was not in any way subject to any agreement by which Tayson had a right with respect to the vehicle, and that, accordingly, appellant should have remission of the forfeiture.

On the other hand, the position of the government is that the automobile was sold and delivered into the hands of Tayson, a known liquor law violator, for his use, by the agent of the dealer Harter Motors, Inc.; that the meeting of minds upon the terms of sale was between them alone; that Tayson alone agreed to make and was expected to make all the payments and did make all that were made, including the down payment and the old car turned in by him; and that Roy H. Canfield was merely a straw man used to conceal the real transaction. It cites and relies upon the reasoning of the court in United States v. One 1935 Chevrolet Coupé (D.C.) 13 F.Supp. 986, 988.

In that case District Judge Peters considered an application for remission of forfeiture decreed against a car seized while containing tax-unpaid illicit liquors, deposited in fraud of the revenue laws. It appeared that the car had been sold and delivered by the agent of an automobile dealer to a known bootlegger on the time payment plan, but the conditional sale contract had been signed by another person who had no record or reputation as a liquor law violator, but who, in fact, had no interest in the transaction. The application for remission of forfeiture was made by the General Motors Acceptance Corporation which had bought the conditional sale contract in good faith after having been furnished with the usual customer's statement and after making inquiry about the character and financial responsibility of the signer of the contract. The court said:

"The pivotal feature of this case is the fact that the signer of the contract was a straw man, the actual purchaser being a well-known violator of the liquor laws who intended to use the car (as he did) in his illicit business, and that this was known to the dealer who sold the car to the bootlegger and the contract to the finance company.

"It should be said, in justice to the officers of the corporation, the dealer in this case, that knowledge of the irregular transaction is imputed to them and they are charged with it only because it was the knowledge of their agent."

The court laid down the rule:

"When it develops, after a seizure and forfeiture such as this, that the sale was actually made to the lawbreaker who caused the forfeiture, and not to the person whose name appears in the contract, the court will disregard the fiction and decide the case on the basis of the true facts."

The true facts in this case are that the confiscated car was sold and delivered by the agent of Harter Motors, Inc., to the liquor law violator Tayson and the defrauding of the revenue laws followed. The liquor law violator, and not the straw man Canfield, acquired the car. The lien of the appellant is good because Tayson is estopped to deny its validity and not because Canfield ever had any claim upon the car in fact or in law.

(2) On study of the wording of subdivision (b) (3) of 27 U.S.C.A. § 40a, we do not agree with the contention of the appellant that the intent of Congress was to relieve the finance company from all inquiry as to the true ownership of the car at the time it acquired its lien thereon, or to save such an interest as the finance company acquired from confiscation under the facts shown. We think the fair intendment of the language of subsection (3) concerning remission of forfeiture is that the appellant could not rely entirely upon a course of business whereby it acquired an interest in the car so nearly approximating the total value thereof without taking care to ascertain who the real owner was in possession of and using the car. We agree with the statement by Judge Peters:

"I see no evidence of any intention on the part of Congress to enlarge the number of opportunities for defrauding the revenue. Quite the contrary. To mitigate the result of this forfeiture would be to inform dealers that by using straw men on contracts dealers can safely sell cars to bootleggers and avoid subsequent forfeiture by turning over the contracts to innocent third parties. That is an avenue for fraud that should not

be opened. The finance companies can easily take precautions against fictitious sales, and the few dealers who would be inclined to such practices will be checked."

The confiscation statute is one intended to prevent frauds upon the public revenue and such statutes "are considered as enacted for the public good, and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature." United States v. Stowell, 133 U.S. 1, 12, 10 S.Ct. 244, 245, 33 L.Ed. 555; United States v. Ryan, 284 U.S. 167, 172, 52 S.Ct. 65, 67, 76 L.Ed. 224.

The trial court rightly decided that the appellant was not entitled to remission of the forfeiture.

Affirmed.