## UNITED STATES v. COOK & BORDER MOTOR CO.

### No. 10766.

Circuit Court of Appeals, Eighth Circuit.

April 13, 1937.

Clinton R. Barry, U. S. Atty., of Fort Smith, Ark. (Duke Frederick and John E. Harris, Asst. U. S. Attys., both of ·Fort Smith, Ark., on the brief), for appellant.

W. N. Ivie, of Rogers, Ark., for appellee.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order entered in a libel proceeding in which one Dodge sedan automobile, seized while it was being used for the deposit and concealment of distilled spirits in violation of the Internal Revenue Law, was condemned and declared forfeited to the United States, but subject to the lien of Cook & Border Motor Company under its conditional sales contract to the amount of $256.80, the intervention of said Cook & Border Motor Company being sustained by the court. The government alone prosecutes this appeal.

Forfeiture proceedings were brought under section 1441, title 26 U.S.C.A., and before the trial of which Cook & Border Motor Company, a partnership composed of Glenn Cook, Gertie Cook, and Charlie Border, filed a claim in intervention, in which they alleged the seizure of the automobile by the United States revenue authorities; that on September 21, 1935, it had sold this automobile to Harley Lauber; that it was sold under a conditional sales contract for the sum of $256.80, payable in installments; that in said contract and note it was stipulated that the title, ownership, or possession

should remain in the intervener until the purchase price had been fully paid; that the sum of $15 had been paid on the note; and that the title was in the intervener. It was also alleged in this intervention that, "It is further stipulated in said note that should said automobile before payment in full be removed for more than three days from the within present residence of the purchaser, without the consent of your intervener, said payee, your intervener herein, may resume possession of said automobile"; that the interest of the intervener was in good faith and that it at no time had any knowledge or reason to believe that the automobile was being used or would be used in violation of the laws of the United States or any state relating to liquor; that Harley Lauber was a young man of twenty years of age, with a good reputation, having no record or reputation of being one who dealt with liquor in any way; that the sale was made to Harley Lauber in good faith; that a copy of the note and contract were attached and made a part of the intervention.

The government demurred to the intervention, which demurrer was overruled, and the cause was tried to the court without a jury on stipulation of the parties. Findings, conclusions of law, and judgment in favor of the government were requested and denied. Thereupon the court found substantially as follows: That on or about December 9, 1935, Grant Lauber was arrested while in the automobile involved in this case, with his wife, and in the automobile there was found ten gallons of whisky contained in twenty one-half gallon fruit jars, upon which containers there were no internal revenue stamps denoting the amount of liquors contained in the containers and stating that all taxes due the government on the liquor had been paid; that subsequently Grant Lauber was indicted by the federal grand jury for having in his possession this distilled spirits without having the internal revenue stamps thereon as required by law, and he entered his plea of guilty to that charge; that the automobile was purchased from the Cook & Border Motor Company on September 21, 1935, by Harley Lauber, the son of Grant Lauber; that Harley Lauber, with his mother, went to the firm of Cook & Border Motor Company, and undertook to purchase this car, proposing to give a car owned by his father as a partial down payment; that Harley Lauber was only nineteen years of age; that the company on account of the age of Harley Lau-

ber advised him that before they would make the trade they would require the consent of his parents; that thereafter Harley Lauber returned with his mother and father and completed the deal; that Harley Lauber was at the time a student in high school, without employment and without income outside of his family, but was a young man of good character; that Grant Lauber had the reputation of being a bootlegger in the community where the intervener was located, but that this reputation was not known to the intervener.

The court concluded as a matter of law that, "the interest in said automobile in question was acquired under said contract of sale by Grant Lauber, and that the pretended interest on his part therein of Harley Lauber was a mere sham and subterfuge"; that the sale on the part of the intervener to Harley Lauber, however, was bona fide, and that they were entirely innocent of any knowledge of the subterfuge, and in good faith in all respects thought they were making the sale to Harley Lauber; that the interveners "were not required to make inquiry as provided for by section 40a (b), title 27 United States Code Annotated, as amended on August 27, 1935, as to the reputation, character and financial standing of said Harley Lauber, and are entitled to have remitted or mitigated in their favor the amount due them under their lien title note, executed on September 21, 1935, less the credits on said note."

On this appeal it is claimed by the government, based upon proper assignments of error, that the evidence was insufficient to warrant the court in rendering judgment in favor of the intervener for remission and mitigation of the forfeiture.

The intervener's claim is based upon section 204 of the Liquor Law Repeal and Enforcement Act, section 40a, title 27 U.S.C.A. Subdivision (b) of this section reads as follows:

"*Conditions precedent to remission or mitigation.* In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the in-

650

terest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

The right to assert a claim to property seized in a proceeding of this character is dependent upon a performance by the claimant of the conditions prescribed by this statute, and the question is whether the intervener has met these conditions. It appears from the evidence without dispute that preliminary negotiations for the sale of this car were had between a sales agent of the intervener and Harley Lauber. When the negotiations were consummated, however, and the papers signed, Harley Lauber, the minor, and his father, Grant Lauber, were present, and while Harley Lauber signed the sales order, at the same time he and his father, Grant Lauber, signed the note representing the balance of the purchase price. Mrs. Cook, one of the partners, testified with reference to the transaction as follows:

"When the deal was made for the present car, Mr. Lauber turned in as a down payment on the present car the 1932 Dodge car which we had previously sold him. I didn't talk to Harley Lauber and had no transaction with him myself about this deal until the afternoon when Grant Lauber, Harley Lauber's father, and Mrs. Lauber, his mother, all came there and the deal was closed and the papers were executed."

The intervener had previously sold Grant Lauber two automobiles, one a 1930 Model Dodge, and the other a 1932 Model, and it was the 1932 Model that was turned in as a part of the purchase price of the car in question. The papers referred to are set out in the record. One is designated as a "New Car Order." It is addressed to Cook & Border Motor Company, and the initial words are, "Please enter my order for one (here follows description of the car, the price to be paid, the amount of the sales tax, the used car allowance, the amount of cash to be paid on delivery, and the balance due)." Then appear the words, "to be paid in payments of $10.00 each." It is recited that the car is purchased subject to the manufacturer's warranty printed on the reverse side of the instrument. Then appears the following: "The price listed above is for immediate delivery. If the price should be increased before I have taken delivery, this order shall be construed as if the increased price was originally inserted. If this order is cancelled, the dealer reserves the right to retain all deposits sufficient to cover liquidating damages. The title to the car to be delivered to me shall remain with you until the price is paid to you in full. I certify that I am 21 years of age or over, that the car I am trading in is my property and free from all encumbrances whatsoever, except balance due as noted above. *This order is not valid unless signed and accepted by an officer of this Company and purchaser's credit has been O. K'd by Finance Company as to any deferred balance.*" (Italics supplied.)

The instrument is signed by Harley Lauber, but it is not signed by the Cook & Border Motor Company, nor by any one on its behalf. So far as this instrument is concerned, it is to be noted that it recites that the alleged buyer was twenty-one years of age or over. This, to the knowledge of the intervener, was false. It also recites that, "The car I am trading in is my property." This, to the knowledge of the intervener, was false. The evidence is without dispute not only that Harley Lauber was a minor, but that the car which was turned in belonged to Grant Lauber and had been sold to him by the intervener. By its terms, the order was of no validity unless signed and accepted by an officer of the company and the purchaser's credit O. K'd by a finance company as to any deferred balance. It affirmatively appears that these conditions were not complied with, so that this instrument was clearly without any validity or binding effect. It could not have been enforced by Harley Lauber because it was not accepted. It could not have been en-

forced by the intervener because, among other reasons, Harley Lauber was a minor. Bearing upon the good faith of the intervener in asserting its claim under this instrument, it is further to be observed that the intervener declined to deliver the car on this instrument, not only because Harley Lauber was a minor, but because he was without property, without income, and without remunerative occupation.

Mr. Border, one of the partners, was interviewed concerning this transaction by a Mr. Temple, who testified as follows:

"I asked Mr. Border if they made an investigation relative to Grant Lauber's reputation as a bootlegger before they sold him that car and he said, 'No, sold it to him like he had been selling to him before.'"

Another witness testified that Border "told us he had made no investigation prior to selling this car to Mr. Lauber; that he had always paid for his car and he did not think it necessary to make investigation."

Mr. Border did not take the witness stand so that these admissions stand undisputed. Mrs. Cook testified that she did not know that the car was going to be used in violation of the law; that she made no inquiry at any place or of any person regarding the reputation or financial standing of either Harley or Grant Lauber, and she testified that she did not know that Grant Lauber had a bad reputation as a law violator, although he was a notorious bootlegger whose reputation as such was preserved in the public records of the community.

As has been observed, Mr. Border, although a member of the firm and available, did not take the witness stand. So far as appears from the record, he may have known all about the reputation of Grant Lauber, and we think it was incumbent upon the intervener to show not only that one member of the firm was without knowledge of this reputation, but that every member of the firm was likewise innocent because the burden of proof was upon the intervener.

The sale of this automobile was in fact made to Grant Lauber, and, as found by the court, the interest of Harley Lauber

"was a mere subterfuge." Following the purchase of the car, Grant Lauber applied for and paid the license, and paid the only consideration that was paid. The only binding contract under which the intervener could assert any right was the conditional sales note which was signed by Grant Lauber. By the terms of this instrument, title was retained by the intervener, and in default of payments specified in the instrument, the intervener had a right to repossess the property. It also had this right in the event the car, before payment in full, should be removed for more than three days from the residence of the purchaser without the written consent of the intervener. This instrument is signed by both Harley Lauber and Grant Lauber. It contains no recitals indicating that it is to be signed by more than one person. It begins with the words, "I promise to pay," and preserves throughout the singular number.

In its conclusions of law, the court specifically recited that the interveners were entitled to have remitted or mitigated in their favor "the amount due them under their lien title note." In other words, the court awarded the intervener relief by virtue of this contract executed by Grant Lauber, concerning whose reputation no inquiry was made, and not by virtue of the alleged "New Car Order," signed by Harley Lauber, and there is no pretense of any compliance with subdivision (b) (3) of the above-quoted statute.

We conclude that Grant Lauber was the actual purchaser of the car [Federal Motor Finance v. United States of America (C.C. A.8) 88 F.(2d) 90, filed Feb. 17, 1937]; that the court's finding of good faith is not sustained by substantial evidence because the partners composing the intervener could not close their eyes in a transaction of this sort, and they had actual knowledge of such facts as charged them with notice of the real character of this transaction [C. I. T. Corporation v. United States (C.C.A.4) 86 F.(2d) 311].

The judgment appealed from is reversed and the cause is remanded for further proceedings consistent herewith.