**UNITED STATES v. ONE 1937 MODEL FORD V–8 COUPE AUTOMOBILE.**

No. 238.

District Court, E. D. Kentucky.
March 1, 1938.

386

John T. Metcalf, U. S. Dist. Atty., of Lexington, Ky.

H. R. Dysard and W. H. Dysard, both of Ashland, Ky., Attys., for petitioner Universal Credit Co.

FORD, District Judge.

This is a libel proceedings on behalf of the United States for forfeiture of an automobile under Revised Statutes, § 3450, 26 U.S.C.A. § 1441. The automobile involved was seized by federal officers while being used by one Charles Sprouse for the unlawful concealment and removal of distilled spirits on which the government tax had not been paid.

The Universal Credit Company is assignee and owner of a conditional sale contract covering the car, upon which there is a balance due of $585.

█ The credit company filed an intervening petition setting up its ownership of the conditional sale contract and other facts upon which it seeks to avoid sale of the car under a decree of forfeiture and claims the right to its possession. No decree of forfeiture has been entered, but, since the facts warranting such decree are not in dispute, the question presented by the intervening petition will be treated as if it arose upon the petitioner's claim for remission after decree.

Section 204 of the Liquor Law Repeal and Enforcement Act of August 27, 1935, 49 Stat. 878, 27 U.S.C.A. § 40a, governs the jurisdiction of the court in cases of this character and makes it essential that one claiming the right to remission shall prove certain definite facts, the establishment of which is a jurisdictional prerequisite.

█ When a claimant has established by proof the existence of the facts prescribed by the statute, remission of the forfeiture follows as a matter of right. Universal Credit Company v. United States, 6 Cir., 91 F.2d 388, 391. This construction of the statute leaves open only the inquiry as to whether the proof establishes the facts required by the statute.

█ One of the statutory requirements is that the claimant shall prove that he had at no time any reason to believe that the car in question would be used in the violation of the laws relating to liquor. Whether the proof establishes this essential fact is the sole issue in this case.

The evidence shows that the automobile in question was sold at Catlettsburg, Ky., by the Galigher Motor Sales Company, a dealer having places of business in Huntington and Kenova, W. Va. The transaction was handled by the dealer's agent, John Chapman, who had an arrangement with Dolpha Skaggs, a member of the Police Department of Catlettsburg, to divide commission with him in consideration of his assistance in promoting sales. Charles Sprouse, the same person who had the car in his possession at the time it was seized, and who had a notorious reputation for violating the liquor laws, desired to purchase a car. The bad reputation of Sprouse was evidently well known both to the policeman, Dolpha Skaggs, and to the petitioner's agent, John Chapman. They together approached Russell Blackburn, a young man of good reputation who operated a filling station in Catlettsburg, and induced him to al-

low the sale of the car to be made in his name in order that it might be financed without disclosing the name of Charles Sprouse, the true purchaser. It was represented to Blackburn that Sprouse would pay him something for permitting the use of his name. The car was in fact sold and delivered to Sprouse, in part payment of which he traded in an old automobile. Blackburn paid nothing whatever on the car and, in fact, was not concerned or interested in the transaction. Upon making this arrangement with Blackburn, the dealer's agent, John Chapman, applied to the intervening petitioner, Universal Credit Company, to finance the deal by telephoning to its office in Huntington, W. Va., representing Blackburn to be the purchaser and giving his confederate, the policeman, Dolpha Skaggs, as reference, and stating that Skaggs was the sheriff of the county in which the transaction took place. The significance of this circumstance arises from the statutory designation of the sheriff as one of the officers to whom an application for information may be made under prescribed circumstances. It was promptly discovered by the manager of the credit company that Chapman's representation to the effect that Dolpha Skaggs was the sheriff of the county was false. Furthermore, the conditional sales contract upon which the petitioner bases its claim in this case called for the dealer to answer the following question: "Have you any reasons to believe the purchaser violates any laws concerning liquor or narcotics?" No answer was made to this question. The place provided for the answer was left blank.

In the testimony of the credit company's manager, H. L. Marchand, who handled the transaction, appear the following questions and answers:

"Q. 67. Isn't it a fact, and don't you know that as a matter of common knowledge, it has become the practice for persons who have a reputation for engaging in the illicit transportation of liquor to buy an automobile in the name of some other person, and use it that way? A. That is one way employed by them; yes.

"Q. 68. And is it not a fact that your company has had many experiences, or several experiences in which a fictitious or 'straw' man was set up as the owner of an automobile when, as a matter of fact, it developed afterward that the person was not the owner, or that the real owner was a man who engaged in the illicit liquor traffic? A. Yes, sir."

Notwithstanding his admitted familiarity with the prevalent practice of the fraudulent use of fictitious names to conceal the purchase of automobiles by liquor law violators, and in spite of the failure of the dealer to answer the pertinent question above set out, and the further fact that false representations were made to him by the dealer's agent as to Skaggs being the sheriff of the county of whom he might make inquiry, nevertheless, the manager of the credit company accepted the conditional sales contract without making any investigation whatever as to whether Blackburn was the real purchaser. He limited his inquiry to the credit rating and reputation of Blackburn. Any reasonable investigation as to the true nature of the transaction would have disclosed the fact that Blackburn was not the purchaser but was merely a "straw man" used to conceal the identity of Sprouse, a liquor law violator and the actual purchaser.

In the case of C. I. T. Corporation v. United States, 4 Cir., 86 F.2d 311, 314, the facts involved were substantially the same as those presented in this case. The court, in commenting upon the effect of such a circumstance as the failure to answer a similar interrogatory, said: "It thereupon became the duty of the claimant to make inquiry and ascertain why the question was not answered and to investigate all other circumstances surrounding the purchaser and his occupation which might throw light upon the possible use of the vehicle. The court found that had such an inquiry been made, the claimant would have had reason to believe that the car would be used for improper purposes, and since there was evidence to justify this finding, the claimant failed to prove, as required by the second condition of the act, that it had no reason to believe that the vehicle would be used for unlawful purposes."

The Circuit Court of Appeals of this circuit in the case of Universal Credit Company v. United States, 6 Cir., supra, interpreted the statute to require a rigid investigation by the credit company, in cases where facts are disclosed to it sufficient to arouse suspicion as to the nature of the transaction. The court said: "The evident meaning of the statute is that such an investigation is required in cases where the suspicion

388

of the financing company should be aroused by facts which come to its attention (Cf. C. I. T. Corporation v. United States, supra, 86 F.2d 311, at page 314)."

In the case of Federal Motor Finance v. United States, 8 Cir., 88 F.2d 90, 93, the court said: "On study of the wording of subdivision (b) (3) of 27 U.S.C.A. § 40a, we do not agree with the contention of the appellant that the intent of Congress was to relieve the finance company from all inquiry as to the true ownership of the car at the time it acquired its lien thereon, or to save such an interest as the finance company acquired from confiscation under the facts shown. We think the fair intendment of the language of subsection (3) concerning remission of forfeiture is that the appellant could not rely entirely upon a course of business whereby it acquired an interest in the car so nearly approximating the total value thereof without taking care to ascertain who the real owner was in possession of and using the car."

The evidence in this case shows that at the time the petitioner, Universal Credit Company, acquired its interest in the automobile in question, the facts before it were sufficient to call for an investigation as to the true nature of the transaction and that such an investigation would have disclosed that the car was to be sold to and for the use of a reputed liquor law violator. No such investigation was made. When a credit or finance company, experienced in the handling of transactions of the kind involved in this case, is confronted with obviously suspicious circumstances and fails to investigate them, ignorance of facts which would have been revealed by such investigation is inexcusable and affords no immunity from the consequences ensuing from them. To hold otherwise would be to invite deliberate evasion of the laws designed to protect the government revenues from fraud and would convert the statutory provisions for remission of forfeiture into a facile means to that end.

My conclusion is that the intervening petitioner has failed to establish its right to remission of forfeiture under the applicable provisions of the statute, and the relief sought by it should be denied. Libelant is entitled to decree of forfeiture.

Let formal findings of fact and conclusions of law and a decree, in conformity herewith, be submitted for entry.