## UNITED STATES v. ONE FORD BEACH WAGON.

### Misc. No. 99.

District Court, D. Rhode Island.

Oct. 31, 1941.

George F. Troy, U. S. Atty., and Joseph Veneziale, Asst. U. S. Atty., both of Providence, R. I., for plaintiff.

Walter J. Hennessey, of Providence, R. I., for defendant.

HARTIGAN, District Judge.

The United States filed a libel of information against One Ford Beach Wagon which bore engine number 18—2815182 and against all persons lawfully intervening for their interest therein in a cause of condemnation and forfeiture under the laws of the United States. Title 26 U.S. C.A. Int.Rev.Code, § 3321, and Title 27 U.S.C.A. § 157.

Samuel Wax of Providence, doing business under the name of Trinity Auto Finance in said Providence, filed his answer to said libel as intervenor and claimant to said beach wagon.

On August 6, 1940, Carl Ritchie, alias Pasquale C. Ricci, of Providence, purchased from Harry's Auto Sales, of said Providence, a Ford Beach Wagon. The sale was made by Harry Katt, who did business under the name of Harry's Auto Sales, and a conditional sale contract was executed by said Carl Ritchie and was assigned by Katt to the intervenor-claimant. Wax claims title to the beach wagon under the terms of the conditional sale contract by reason of the failure of said Carl Ritchie to comply with the terms thereof. He also claims that he acquired title in good faith and at no time had any knowledge or reason to believe that it was being or would be used in violation of the laws of the United States or of any State relating to liquor.

The beach wagon was seized on January 28, 1941, by agents of the Alcoholic Tax Unit after they had raided and seized an illicit distillery on Highland Avenue, North Providence. Alfred Ricci, a brother of said Carl Ritchie, pleaded guilty in this court on April 8, 1941, to an indictment returned against him in connection with the operation of said illicit distillery.

An agent of the Alcoholic Tax Unit testified that on January 27, 1941, he saw Alfred Ricci on two occasions on that day get out of the beach wagon and carry from it packages marked "yeast foods" to a shed where an illicit still was discovered by the government agents later that day.

When the government agents seized the beach wagon it contained no illicit liquor, yeast or sugar. About nineteen or twenty pounds of yeast were seized at the still.

Wax testified that he sent an investigator to make an investigation of Carl Ritchie when he took the assignment of the conditional sale contract from Katt; that he had no knowledge that the beach wagon was to be used in connection with violations of the laws of the United States or of any State relating to liquor, and that he did not know Carl Ritchie at the time of the sale.

Katt testified that he sold the beach wagon to Carl Ritchie and that he had no knowledge that it was to be used for illegal purposes. He admitted that he knew Alfred Ricci who was present with Carl at the time of the sale. He denied that at the time of the sale of the beach wagon Alfred Ricci asked him if he wanted to buy "moonshine" from him. He said that he did not know that Alfred Ricci was a bootlegger. He denied telling the government agents that he knew the beach wagon was to be used by a bootlegger.

Harry Gordon testified that he was a free lance investigator and that he investigated for the Trinity Auto Finance; that he made a check of the credit rating of Carl Ritchie and that he reported to Wax that Carl was O.K.

In his cross-examination he admitted that he did not remember too much about the investigation; that he was interested in Carl's address, where the car was to be kept, where Carl was working and where "we are to get our money". He said that he would not O.K. the deal if he knew the beach wagon was to be used for bootlegging purposes.

An Alcoholic Tax Unit agent testified that he interviewed Katt who informed him that Alfred Ricci made a $100 down payment on the beach wagon and that Alfred wanted it in the name of Carl Ritchie. The agent also testified that Katt told him that Alfred informed Katt that he, Alfred, was a bootlegger. The agent said that he showed Katt a picture of Alfred Ricci and that Katt said Alfred was the man who

bought the beach wagon and did not want it registered in his name. The agent also testified that Katt informed him that Alfred asked Katt if he wanted to buy moonshine from him.

Pasquale C. Ricci testified that he is also known by the name of Carl Ritchie which he signed on the conditional sale contract and note; that in August, 1940, he was employed as a mill section hand; that he was never engaged in liquor transactions and that he had no criminal record.

In cross-examination he admitted that in August, 1940, he also owned a 1933 Chevrolet automobile and was earning then $18.90 per week. He testified he made the initial payment of $100 from money that he had saved. He admitted that his brother Alfred was with him when he bought the beach wagon.

He testified that he bought the beach wagon because his fellow employees wanted to ride to and from work with him and that he borrowed $100 from a bank. Later he denied that he borrowed this money from the bank. He also testified that he had his brother Alfred borrow the money from the bank for him which was used for the initial payment.

Carl admitted his automobile operator's license was issued in the name of Pasquale C. Ricci and that his Chevrolet automobile and the beach wagon were registered by the State of Rhode Island in the name of Pasquale C. Ricci.

Under cross-examination he was able to give the name of only one passenger who rode in the beach wagon to and from work with him. He admitted that the loan from the bank was obtained by his brother Alfred. He said that he always paid his brother, who in turn paid the bank. He also admitted that he told one of the government agents that he paid his own money for the beach wagon.

The conduct and demeanor of Pasquale C. Ricci on the witness stand did not impress me. In his obvious endeavor to help his brother Alfred he was evasive and told conflicting stories about the money used for the purchase of the beach wagon.

While Pasquale C. Ricci, alias Carl Ritchie, was the ostensible purchaser of the beach wagon, the facts and circumstances clearly lead me to believe that he was the straw man in the transaction and that the real purchaser was his brother, Alfred Ricci.

In United States v. One 1935 Chevrolet Coupé, D.C., 13 F.Supp. 986, 982, the court said: "When it develops, after a seizure and forfeiture such as this, that the sale was actually made to the lawbreaker who caused the forfeiture, and not to the person whose name appears in the contract, the court will disregard the fiction and decide the case on the basis of the true facts."

Title 27 U.S.C.A. § 40a(b) provides: "Conditions precedent to remission or mitigation. In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

The testimony discloses claimant's failure to establish compliance with the conditions imposed by Sec. 40a(b) (3).

Gordon's testimony clearly indicated that his investigation was concerned mainly with the question of Wax getting his money on the deal and there is no evidence that an adequate and reasonable inquiry concerning the record and reputation of the real purchaser was made. It would

seem that Wax was at least negligent in not ascertaining the true name of the straw purchaser.

I find that Alfred Ricci was the true owner of the Ford Beach Wagon in question.

I find that the claimant was not without negligence in complying with the provisions of subsection (b) (3) of said Section 40a.

I find that Katt made the sale of the beach wagon to Alfred Ricci, a bootlegger, and that Katt at the time had knowledge from Alfred Ricci that he was a bootlegger.

I find that the conditional sale contract was signed by Carl Ritchie, a straw man, who was acting for his brother, Alfred Ricci, who was the real purchaser, and I also find that the investigation of a prudent man would disclose that Alfred was the real purchaser of the beach wagon.

I find that said beach wagon was used by Alfred Ricci in violation of the laws of the United States relating to liquor.

The facts in the case at bar are distinguishable from those in United States v. One Ford Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249, upon which the claimant relies.

In the case of United States v. Ford Truck, Motor and S. No. BB18—3749639, 3 Cir., 115 F.2d 864, 865, the court said: "The actual principle was well expressed by the District Court for the Eastern District of Pennsylvania in the case of United States v. One Ford Coupé, 24 F.Supp. 74, 75, 76. The court stated, 'The words "record" and "reputation" are given equal importance in the Act. The natural place to go for information about the existence of a record would be the enforcement officers. In fact, it would seem that the purpose was to relieve the claimant of the burdensome necessity of searching the court records of all the counties or federal districts in which the prospective purchaser had lived or been engaged in business. The same idea was undoubtedly in mind wth regard to reputation. It is a lesser burden merely to inquire of these (law enforcement) officers than to trace a man's reputation through his various past activities, surroundings and domiciles. * * * The net result is that a finance company, in order to be safe, must inquire of the officers specified both as to record and reputation.' "

In United States v. One 1939 Model De-Soto Coupe, etc., 10 Cir., 119 F.2d 516, 520, the court said: "This statute should be uniformly construed throughout the United States. It has a direct bearing upon trade and commerce and out of the confusion which has pervaded this field we must evolve a rule capable of universal application. If we adopt a rule which requires the prospective purchaser of commercial paper on automobiles to make inquiry of one of the officers enumerated in the statute in the designated locality, and to secure from him an 'answer' that the purchaser of the automobile which is the subject of the commercial paper had no record or reputation for violating the liquor laws of the United States or any state, we will have established a simple practical and unburdensome rule to govern intercourse in this important field of commerce, and at the same time we will have adequately and efficiently protected the revenue laws of the United States against the 'boot-leg' hazard. Indeed this purpose is manifest in the many adjudicated decisions indicating a rule of strict construction. See Federal Motor Finance v. United States, 8 Cir., 88 F.2d 90."

In the case at bar there is no evidence that the claimant, Trinity Auto Finance, inquired of the officers specified both as to the record and reputation of either Carl Ritchie or Alfred Ricci for violating the liquor laws of the United States or any state. See United States v. One Ford Coupe, D.C., 40 F.Supp. 540.

The petition of the claimant is denied and dismissed and the prayer of the United States that the aforesaid Ford Beach Wagon be condemned by decree of forfeiture is granted.