PEOPLES BANK & TRUST CO.,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20763.

United States Court of Appeals
Fifth Circuit.

June 9, 1964.

598

Frank W. Riggs, III, Albert W. Copeland, Montgomery, Ala., Godbold, Hobbs & Copeland, Montgomery, Ala., of counsel, for appellant.

Ben Hardeman, U. S. Atty., J. O. Sentell, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before MAGRUDER,* JONES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal from an order of the District Court for the Middle District of Alabama denying the claimant's (appellant) petition for remission of forfeiture. The forfeiture chattel is a 1962 Chevrolet automobile purchased by Mrs. Syble Russell and financed by the claimant. Mrs. Russell used the car 4½ days a week to drive a distance of 35 miles from her home in the country to her place of employment in Montgomery. She was employed as credit manager of a ladies' shop. The car was purchased from a local dealer in Montgomery, Alabama, on April 5, 1962, and arrangements for the loan were made by Mrs. Russell in a conversation with a Vice President of the claimant by telephone. She made the initial down payment of $683.92 and borrowed the balance of $2,767.00,[1] for which she executed a chattel mortgage on the day of the purchase. The chattel mortgage was executed on a form apparently provided by the claimant. The vehicle was not described in detail but is referred to in the mortgage simply as "1962 Chevrolet, Impala cpe," followed by two numbers evidently representing the serial number and the motor number. The bill of sale or other title papers are not contained in the record and the record fails to disclose that the Vice President who made the loan examined the title papers at the time arrangements for the loan were made. Indeed the record shows, as

---

* Senior Circuit Judge of the First Circuit, sitting by designation.

1. In its brief, claimant asserts that the loan to Mrs. Russell was $2,400.00. The record discloses a chattel mortgage in the amount of $2,767.00 and interest is provided after maturity only. It is entirely likely that the difference represents interest for the period during which the loan, principal and interest, was amortized, a period of three years.

mentioned above, that commitment to make the loan was made over the telephone.

Although the car was purchased on April 5, 1962, and the mortgage given on that date, the libel of information seeking a forfeiture was not filed until December 13, 1962, over eight months after the purchase date. The car was seized on September 21, 1962, over five months after the date of purchase. It is alleged that the vehicle was seized as forfeited property because it "had been used in Montgomery County, Alabama, on June 5, 1962, in violation of the Internal Revenue laws of the United States, in the conduct of the business of selling distilled spirits," etc. The alleged unlawful use of the vehicle occurred 60 days after purchase.

At the time of the loan, the claimant obtained a credit report on Mrs. Russell which was satisfactory; she had previously borrowed money from the claimant and her repayment record was good; payments on the loan were $77.00 per month and she earned $47.50 per week; her sister was a valued employee of the claimant; and the price of the vehicle was substantially more than the amount of the loan. It was stipulated that at all times pertinent to the litigation the husband had a reputation among law enforcement officers in the community in which he lived of being a liquor law violator.

■■ The trial court correctly stated the rule in cases of forfeiture and petitions for remission, that there must be circumstances which put the lender on notice as to the likelihood that the vehicle

may be used in violation of the law before the right of remission is denied.[2] The court then proceeded to find that the claimant-bank, "as a matter of law, was put on notice by the following facts:" the size of the monthly payments ($77.00) as compared with Mrs. Russell's salary ($47.50 per week); amounts previously deposited in the Russell joint account in the claimant bank were inconsistent with Mrs. Russell's income; and the account on which the initial payment check was drawn was overdrawn at the time the check was given and had been frequently overdrawn on prior occasions. The court further found that the type of automobile was a factor which should have put the claimant on notice even though Mrs. Russell stated that her husband had no connection with the purchase, because the automobile was equipped with a 300 h. p. engine, 4-speed transmission, heavy duty front and rear springs, and heavy duty front shock absorbers; and finally, the credit report furnished to the Bank showed that Mrs. Russell was directly dependent upon her husband. The court stated: "All of the foregoing was sufficient for the Bank to have reasonably suspected that someone—other than Mrs. Syble Russell—had an interest in the purchase of the automobile." It was further concluded that after such notice to the Bank, as found by the court, a duty arose to investigate further and that such an investigation after such notice would have disclosed the interest of Mr. Russell in the purchase, and that the car would likely be used by Mr. Russell in the illicit liquor business.[3]

In our opinion the facts found by the District Court were not legally sufficient

2. "Section 3617 is a remedial measure, enacted in recognition of the fact that in many instances the drastic remedy of forfeiture may be unjust, and is intended to afford relief to innocent parties where their claims are just and reasonable." United States v. Farrior Motor Co., Inc., (5th Cir. 1952) 198 F.2d 68.

3. The following is from the opinion by the court:
"All of the foregoing was sufficient for the bank to have reasonably suspected

that someone—other than Mrs. Syble Russell—had an interest in the purchase of the automobile. United States v. Dodd, supra. The bank, after this notice, had the duty to investigate further, and a reasonable investigation by the bank, after this notice, would have discovered the interest of Lister Hill Russell in the purchase, and, further, that the car would likely be used by the husband, Lister Hill Russell, in his illegal activities. 18 U.S.C.A. § 3617."

to require an inquiry on the part of the Bank into the record or reputation of the husband as a liquor law violator. The claimant was not in possession of such facts as imposed upon it a duty to investigate and look into the record, reputation, and affairs of the husband.

The controlling statute is 18 U.S.C.A. § 3617(b) which sets forth conditions precedent to remission or mitigation.[4] That section is long, involved, and contains difficult phrasing which has resulted in conflicting views as to its meaning. United States v. Automobile Financing, (5th Cir. 1938) 99 F.2d 498; United States v. One 1936 Model Ford, (4th Cir. 1938) 93 F.2d 771; Federal Motor Finance v. United States, (8th Cir. 1937) 88 F.2d 90. The meaning and purpose of the statute is best set forth in United States v. One 1936 Model Ford, (1938) 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249, 1260:

> "These facts indicate that Congress intended a reasonable inquiry concerning the bootleg risk should be made in connection with the investigation of financial responsibility. *They negative the notion that wholly innocent claimant at his peril must show inquiry concerning something unknown and of which he had no suspicion. Dealers do not investigate what they have no cause to suspect.*

> "The forfeiture acts ars exceedingly drastic. They were intended

for protection of the revenues, not to punish without fault. It would require unclouded language to compel the conclusion that Congress abandoned the equitable policy, observed for a very long time, of relieving those who act in good faith and without negligence, and adopted an oppressive amendment not demanded by the tax officials or pointed out in the reports of its committees.

> "Subsection (b) (3) was intended to prevent remission to a claimant who had failed to inquire when he should have done so, to one chargeable with willful negligence or purpose of fraud. It would be excessively harsh, unreasonable indeed, to say that one dealing in entire good faith must, at his peril, first discover and then make inquiry concerning somebody of whose existence he has no knowledge or suspicion. We cannot think Congress intended thus to burden dealing in all vehicles capable of transporting liquor." (Emphasis added.)

In the case at bar there is not the slightest suggestion that the Bank failed to act in utmost good faith. There is no indication that the claimant at any time dealt in questionable automobile paper. As a matter of fact there is no proof that Mrs. Russell was in any manner or form connected with the illicit liquor traffic, or that she had the slightest sus-

---

4. The pertinent provisions of the statute are as follows:
"* * * the court shall not allow the claim of any claimant * * * until he proves * * * (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws * * * and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right un-

der such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

picion that her husband would use the car for such purposes. Mrs. Russell's former dealings with the Bank were satisfactory. No doubt some confidence on the part of the claimant in Mrs. Russell was generated by the fact that her sister was a highly respected employee of the claimant. Mrs. Russell was the ostensible, and from aught appearing in the record, the actual purchaser of the vehicle and the only real party in interest. In such circumstances this Court has stated the applicable rule in General Finance v. United States, (5th Cir. 1955) 226 F.2d 735:

"* * * the district judge * * * erroneously found and concluded * * * that a finance company, acting in good faith, cannot rely upon the title being in the ostensible maker of the papers and owner of the car, but must in every case make inquiry as to whether there is a possibility that a hidden purchaser is involved.

"The conclusion that this is the law finds no support, we think, except in the reasoning of the district judge that the law ought to be so declared. It certainly finds none in the authorities."

See also the earlier case of United States v. 1938 Model Chevrolet, 106 F.2d 985 (5th Cir. 1939). In the litigation which followed soon after the enactment of the statute in question, this Court announced its conception of the meaning of the statute in the Automobile Financing case, supra:

"The long legislative and judicial history of the struggles of those engaged in a large and legitimate industry, automobile financing, to protect themselves and their industry from the ruinous consequences of wholesale forfeitures, unreasonable and unjust as to them from the standpoint of bona fides, and the committee reports accompanying the passage of the Remission Act, all conspire to support, as the construction intended for the Act, that in the absence of circumstances putting them upon notice, persons dealing with automobile paper in due course and in good faith, may deal with it upon the faith of the ownership being as it appears upon the papers to be."

To deny relief to the claimant here would be to ignore the realities of the case. In the commercial world where numerous loans are made by banks on automobiles, boats, appliances, and other chattels, it is unrealistic to hold, under the facts and in the circumstances in this case, that the purchase of an automobile by a married woman imposes upon the lending institution the duty to investigate the possibility that her husband may use such vehicle in the illicit liquor business. The two-car family, suburban living, and the independent employment of married women are common in numerous localities. Likewise, the Court is not unaware that many automobiles on the market today are equipped with powerful engines, 4-speed transmissions, speedometers to register high speeds, and other equipment similar to that which appeared on the automobile purchased by Mrs. Russell. As stated by the salesman who sold the car to Mrs. Russell, the equipment involved was not installed on the car at the special request of Mrs. Russell, but such equipment was not unusual on this model and make of automobile.[5]

The judgment is reversed and the cause is remanded for proceedings consistent with this opinion.

5. The following is from the testimony of Salesman Fowler:
"By Mr. Copeland:
"Q. Mr. Fowler, was this automobile from your open stock?
"A. Yes, sir.
"Q. You had it in stock?

"A. Had it in stock.
"Q. And these extras that Mr. Sentell has asked you about that are detailed on the buyer's order; they were not added to the automobile?
"A. No, sir."