## UNITED STATES v. ONE FORD COUPÉ.
### No. 46.

District Court, E. D. Pennsylvania.
May 5, 1938.

J. Lawrence Grim, Asst. U. S. Atty., of Morrisville, Pa.

George A. Rupp, of Allentown, Pa., for claimant Finance Company.

KIRKPATRICK, District Judge.

This was a petition for the remission of the forfeiture of an automobile which had been seized by the government upon the ground that it had been used in the removal, deposit and concealment of illegally manufactured liquor. The petitioner is a finance company holding a bailment lease of the car in question.

There is no question that the car was used by the bailee in violation of the revenue laws.

Under 27 U.S.C. Sec. 40a, 27 U.S.C.A. § 40a, the claimant may not have the forfeiture remitted unless he proves three things: First, that he has an interest acquired in good faith; second, that he was innocent at all times of any knowledge of or participation in the illegal use of the car; third (and this is the point involved in this case) if the bailee or purchaser in whose possession the car was seized is a "person having a record or reputation for violating" the liquor laws, then the petitioner must show that before the car was financed "the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

This provision can, it seems to me, mean only one thing: In cases of purchasers or bailees with records or reputations as violators, the finance company must show that it was misinformed after inquiry at the sources named in the Act. It follows that as to every prospective purchaser or bailee a finance company assumes a certain risk if it fails to make inquiry of the officers named in the Act. The risk is that such person was one of the class of those to whose names a record or reputation had theretofore attached. If such exists, then, of course, in the absence of inquiry the claimant can not show that it was misled.

The only question is what is meant by reputation. The claimant's proposition is that the term applies to a general reputation in the community, and that the fact that a person may have been under surveillance by the police for a long period of time as a result of the reports of officers and informers is not sufficient to put into effect the third requirement of the Act. With this I can not agree. The words "record" and "reputation" are given equal importance in the Act. The natural place to go for information about the existence of a record would be the enforcement officers. In fact, it would seem that the purpose was to relieve the claimant of the burdensome necessity of searching the court records of all the counties or federal districts in which the prospective purchaser had lived or been engaged in business. The same idea was undoubtedly in mind with regard to reputation. It is a lesser burden merely to inquire of these officers than to trace a man's reputation through his various past activities, surroundings and domiciles.

In the present case it is conceded that, if inquiry had been made of the investigator in charge of the alcohol tax unit, the claimant would have learned that its customer was known to the police as active in bootleg circles in Allentown and vicinity for the past three years, and that he was believed by the agents of the State Liquor Control Board, upon information satisfactory to them, to have been for the past seven years a persistent violator of the liquor laws.

It is more than likely that what the claimant says as to his reputation in the general community is true. Bootleg activities are usually under cover and not widely advertised. This is another reason for construing the Act as it is now construed. The purpose was to relieve the finance companies who have been careful, and to require them to resort to what is undoubtedly the best source of information. It is to be remembered that the Act is a limita-

tion of the principle of forfeiture of instrumentalities of tax evasion, which has been long recognized as a basic principle. It is clearly not intended to broadly relieve all innocent owners whose property was being used by another. The second requirement of the Act standing alone would have done that and there would have been no necessity of adding the third had this been the intention. The third provision greatly narrowed the exemption.

The net result is that a finance company, in order to be safe, must inquire of the officers specified both as to record and reputation. I have read the various cases cited by the claimant and can only say that the purpose of this Act seems so plain to me that I am unable to agree with the decisions which hold otherwise.

The petition for remission may be dismissed.