**UNITED STATES v. FORD TRUCK, MO-
TOR AND SERIAL NO. BB18–3749639.**

**No. 7472.**

Circuit Court of Appeals, Third Circuit.

Nov. 26, 1940.

George Mashank, of Pittsburgh, Pa.,
for appellant.

David M. Kaufman, of Pittsburgh, Pa.,
for appellee.

Before BIGGS, MARIS, and CLARK,
Circuit Judges.

BIGGS, Circuit Judge.

The petitioner, Pittsburgh Parking
Garages, Inc., filed its petition for re-
mission of forfeiture of a Ford truck. The
United States filed an answer alleging that
the petitioner had not complied with Sec-
tion 204(b), Chapter 740, Act of August
27, 1935, 49 Stat. 878, 27 U.S.C.A. §
40a(b), which provides, inter alia, that
"In any * * * proceeding [for for-
feiture] the court shall not allow the claim
of any claimant for remission * * *
(3) if it appears that the interest asserted
by the claimant arises out of or is in
any way subject to any contract or agree-
ment under which any person having a
record or reputation for violating laws of
the United States or of any State relating
to liquor has a right with respect to such
vehicle * * * [unless] before such
claimant acquired his interest, or such
other person acquired his right under such
contract or agreement * * *, the
claimant, * * * was informed in an-
swer to his inquiry, at the headquarters of
the sheriff, chief of police, principal Fed-
eral internal-revenue officer engaged in
the enforcement of the liquor laws, or
other principal local or Federal law-en-
forcement officer of the locality · * * *
in which such other person then resided,
and of each locality in which the claimant
has made any other inquiry as to the char-
acter or financial standing of such other
person, that such other person had no such
record or reputation."

The petitioner had leased the truck on
May 19, 1938, to Paul Taormina by a writ-
ten lease. The manager of the petitioner
has testified that he then had no knowledge
or reason to know that Taormina intended
to use the truck for violating the laws of
the United States. This court held in
Pittsburgh Parking Garages v. United
States, 3 Cir., 108 F.2d 35, 36, that in
proceedings for remission of forfeiture
under Section 204(b) the burden of prov-
ing Taormina's "record or reputation" for
violating the laws of the United States
rested upon the United States, reversing
the decision of the court below. The cause
was remanded and came on for further
hearing and the government proved by the
testimony of agents of the Alcohol Tax

Unit that Taormina had a reputation as a liquor law violator. The agents testifying did not live in the same community with Taormina. Taormina has no "record" as a liquor law violator.

The District Court held that the "reputation" which supplies the test of the statute is general reputation in the neighborhood in which the law violator lives, citing United States v. C.I.T. Corporation, 93 F.2d 469, 471. In that case the Circuit Court of Appeals for the Second Circuit held that the word "reputation" as used in the statute meant " * * * reputation in the usual sense, a prevalent or common belief, a general name, the opinion of a number of persons, a more or less extended and public attribution of the crime, likely to be spread about so as to reach the seller." A decree directing the remission of forfeiture was entered.

In the case of United States v. One Hudson Coupe, 110 F.2d 300, 303, a different interpretation was placed upon the statute by the Circuit Court of Appeals for the Fourth Circuit, that court stating, "The statute, subsection (b)(3), requires that inquiry as to a person's liquor reputation be made of a specified group, who would be most likely to know it. The inquirer can then insist that he be informed of the general reputation and not of chance reports to the informant. We do not think it was the intendment of this subsection to impose the duty of inquiry only when the person's reputation for illicit dealing in unlawful liquor transactions had achieved such a notoriety that it was known or should have been known by the claimant and others in ordinary business transactions. If such a situation had existed, claimant would have been barred by subsection (b)(2). Obviously, subsection (b)(3) was directed to reach a different situation." The case just cited can be distinguished from that at bar for the purchaser of the automobile in the cited case had a "record" as a violator of state liquor laws, but none the less we find the reasoning of the court to be most persuasive.

The actual principle was well expressed by the District Court for the Eastern District of Pennsylvania in the case of United States v. One Ford Coupe, 24 F.Supp. 74, 75, 76. The court stated, "The words 'record' and 'reputation' are given equal importance in the Act. The natural place to go for information about the existence of a record would be the enforcement officers. In fact, it would seem that the purpose was to relieve the claimant of the burdensome necessity of searching the court records of all the counties or federal districts in which the prospective purchaser had lived or been engaged in business. The same idea was undoubtedly in mind with regard to reputation. It is a lesser burden merely to inquire of these [law enforcement] officers than to trace a man's reputation through his various past activities, surroundings and domiciles. * * * The net result is that a finance company, in order to be safe, must inquire of the officers specified both as to record and reputation."

We are in accord with these views. We are of the opinion that the "reputation" of the statute is reputation among law enforcement officers, the duty having rested upon the claimant to make inquiry among such officers. When proof was made by the government of Taormina's bad reputation among law enforcement officers of the locality in which Taormina lived, the burden shifted to the petitioner to show that it had made inquiry of such officers as to Taormina's reputation and had been misled.[1]

---

[1] Assuming the statute to be ambiguous, our view is amply supported by Senate Report No. 1330, 74th Congress, First Session, which states in part: "Certain standards are given to the court to guide it in this determination. Thus, under subsection (b) the claimant must prove that he * * * had no knowledge or reason to believe that the vehicle * * * was being or would be used in violating Federal or State liquor laws, and that, if his interest arises out of * * * any agreement under which any person having a record or reputation for violating Federal or State liquor laws has a right with respect to the vehicle * * *, the claimant, * * *, before the other person acquired his right, * * * inquired at the headquarters of the principal local or Federal law enforcement officer in the locality where such other person acquired his right, * * * whether the other person had such a record or reputation, and was informed he had not. This last requirement is predicated upon the recognition of the 'bootleg hazard' as an element to be considered in investigating a person as a credit risk. As a matter of sound business practice, automobile dealers,

The decree of the court below is reversed and the cause is remanded, with directions to proceed in accordance with this opinion.

finance companies, and prospective lien holders on automobiles examine records, and make inquiry of references and credit rating agencies as to the owner's or prospective purchaser's reputation for paying his debts and his ability to do so. This subsection merely requires that in making such inquiry, the 'bootleg hazard' also be examined as one aspect of the credit risk."