## UNITED STATES v. ONE 1939 MODEL DE SOTO COUPE, MOTOR NO. S6–27,687, et al.

### No. 2172.

Circuit Court of Appeals, Tenth Circuit.

March 18, 1941.

Rehearing Denied May 28, 1941.

PHILLIPS, Circuit Judge, dissenting.

---

Joe W. Howard, Asst. U. S. Atty., of Tulsa, Okl. (Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., on the brief), for appellant.

F. J. Lucas, of Tulsa, Okl., for appellees.

Before PHILLIPS, MURRAH, and WILLIAMS, Circuit Judges.

MURRAH, Circuit Judge.

The United States brought this action under Title 27 U.S.C.A. § 224, for the forfeiture of one 1939 model DeSoto automobile, which one D. A. (Dan) Myers purchased from the Carriger Motor Company at Tulsa, Oklahoma. The Commercial Investment Trust Corporation, claimant and appellee herein, is the purchaser of the conditional sales contract on which there was a balance due of $635.12, when the car was seized by the government on the 29th day of January, 1940. The claimant sought remission of the forfeiture under Title 27 U.S.C.A. § 40a. The trial court granted remission conditioned upon the payment of a specified sum to cover storage and other expenses incurred by the government. The United States has appealed.

The question presented requires the construction of Section 40a (b) (3) of Title 27 U.S.C.A.

The stipulated facts reveal that when the claimant purchased the conditional sales contract from the Carriger Motor Company, the vendor, it relied upon a previous satisfactory credit experience with the purchaser, Myers, which involved the purchase of a refrigerator, and upon the further credit report furnished to the claimant by the Retail Merchants Association of Tulsa where Myers lived, which gave the occupation of Myers as a "lease broker." Myers did not have a criminal record of any nature, but was arrested in the Eastern Judicial District of Oklahoma in 1937, and charged with the violation of the importation laws (Liquor Enforcement Act of 1936, Title 27 U.S.C.A. § 223). The case was dismissed because the court held the act then not applicable to Oklahoma. See Dunn v. United States, 10 Cir., 98 F.2d 119, 117 A.L.R. 1302. A record of his arrest was thereafter kept on file at the office of the Investigators in charge of the Alcohol Tax Unit of the Bureau of Internal Revenue in Oklahoma City, and the Investigators of the Alcohol Tax Unit at Tulsa, Oklahoma, had knowledge of such arrest, and, prior to the purchase of the automobile by Myers from the Carriger Motor Company, and the contract by the claimant, the Alcohol Tax Unit and enforcement officers had again commenced the enforcement of Sec. 223, Title 27, U.S.C.A., and Myers had been on their list as a suspect for violation of this law. Hayes et al. v. United States, 10 Cir., 112 F.2d 417.

On January 29, 1940, Myers was apprehended within the Northern District of Oklahoma, while operating the automobile in question, containing sixty-three gallons

of assorted tax-paid liquors, which on that date had been transported from Joplin, Missouri, to the point where Myers was apprehended. After Myers was apprehended and the automobile seized, but not before, the claimant made inquiry of the Chief of Police of the City of Tulsa, and the Sheriff of Tulsa County, and ascertained that Myers had no record or reputation with them for violating the state or federal liquor laws.

The Carriger Motor Company, or the salesmen who sold the car, had no knowledge or information which would lead them to believe that Myers would use the car for other than lawful purposes. The trial court specifically found that said Myers did not have such reputation for unlawfully dealing in intoxicating liquors as would require further inquiry and investigation by the claimant.

On these facts we are asked to decide whether the claimant satisfied the requirements of the act which authorizes the remission and mitigation of forfeitures, Title 27 U.S.C.A. § 40a (b), and particularly subsection (b) (3). Admittedly the claimant has satisfied subsections (b) (1) and (2), and it remains only to determine whether he has met the requirements of subdivision (3), and precisely the question of what constitutes a reputation within the meaning and context of subsection (b) (3).

■ The difficult phrasing of subsection (b) (3)· has produced divergent views concerning its meaning. In United States v. One 1936 Model Ford V-8 DeLuxe Coach, 307 U.S. 219, 59 S.Ct. 861, 868, 83 L.Ed. 1249, the Supreme Court abridged and simplified the abstruse language employed in subsection (b) (3) as follows: "The court shall not allow the (request)—claim—of any claimant for remission or mitigation, if it appears that the interest asserted by (him)—the claimant—arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to

such vehicle or aircraft, unless and until he (the claimant) proves that before (he) —such claimant—acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, (he)—the claimant—his officer or agent, was informed in answer to his inquiry, at (certain headquarters specified in the alternative) as to the character or financial standing of such other person, that such other person had no such record or reputation."

The purpose of this legislation was remedial and enacted for the benefit of those positioned like the claimant here. Upon its enactment, for the first time the power of remission or mitigation was vested in the courts, but jurisdiction to remit or mitigate was clearly conditioned upon compliance with the requirements of the statute. [1]

In United States v. One Hudson Coupe, 4 Cir., 110 F.2d 300, 302, it is stated " * * * it should by now be an elementary proposition that subsection (d) of this statute grants to the trial court discretion to refuse or grant remission or mitigation only when the statutory conditions have been fulfilled." It must be conceded that if Myers had a reputation within the meaning and context of (b) (3), the trial court was powerless to mitigate. The automobile was purchased, and the contract of sale consummated in Tulsa County. Myers lived in Tulsa County. The claimant had a previous credit experience with Myers. The experience was favorable. It concluded that he was a good credit risk financially. It investigated his financial credit standing through the Retail Merchants Association in Tulsa. It ascertained that his occupation was a lease broker. It had no reason to believe that the automobile would be used to violate the Internal Revenue laws. The public generally did not know that Myers had been apprehended for transporting whiskey in violation of the law, or that the Alcohol Tax Unit, charged with the responsibility of enforcing the liquor importation laws, had listed him as a suspect.

---

1 United States v. One 1936 Model Ford V-8 De Luxe Coach, 307 U.S. 219, 59 S. Ct. 861, 83 L.Ed. 1249; Universal Credit Co. v. United States, 4 Cir., 111 F.2d 764; United States v. One Hudson Coupe, 4 Cir., 110 F.2d 300, 302; United States v. One 1936 Model Ford, 4 Cir., 93 F.2d 771; United States v. Automobile Financing, 5 Cir., 99 F.2d 498; C. I. T. Corp. v. United States, 4 Cir., 86 F.2d 311; United States v. C. I. T. Corp., 2 Cir., 93 F.2d 469; United States v. National Discount Corp., 7 Cir., 104 F.2d 611; United States v. McArthur Chev. Co., 5 Cir., 117 F.2d 343, decided January 29, 1941.

The investigators of the Alcohol Tax Unit at Tulsa, Oklahoma, knew that Myers had been apprehended and he was listed in their records as a suspect for the violation of the liquor laws. Therefore, with the investigators of the Alcohol Tax Unit, he had a "reputation for violating the laws of the United States or of any state relating to liquor." Is this the reputation of which subsection (b) (3) speaks by the use of the language "if it appears"? If it is, the claimant cannot prevail, because it did not make inquiry of some one of the officers enumerated in subsection (b) (3) until after the seizure.

■ A rational analysis of the act leads us to the conclusion that "reputation" within the context and meaning of subsection (b) (3) has reference to the "reputation" which the purchaser of the automobile bears with any one of the law enforcement officers enumerated in the act. In United States v. Federal Credit Co., 5 Cir., 117 F.2d 341, 343, decided January 29, 1941, Judge Holmes stated: "To manifest its innocence and vigilance, the interested party is required to make the investigation fixed by statute. If he wishes to take the risk of forfeiture, he may decline to make any investigation; in any case, he may make that investigation that he considers the nature of the risk to require * * * but to exonerate himself entirely from any possible liability in event of forfeiture each of the conditions precedent must be complied with by him."

The law does not require one to do a useless thing. Therefore, if, in the instant case, the claimant failed to make inquiry of one of the several officers mentioned in the act, and a forfeiture was had and a mitigation sought, and the government failed to prove that inquiry from any of the officers mentioned in the act would have revealed a "record or reputation," the claimant would be entitled to mitigation or remission because further inquiry would not have revealed any record or reputation. In that event, the claimant would have taken the risk but averted the penalty imposed because compliance would have been useless.

In United States v. One Hudson Coupe, 4 Cir., 110 F.2d 300, 303, the court, speaking through Judge Dobie, states: "Concerning the requisite generality of 'reputation', as broadly defined, there is no question. See United States v. C. I. T. Corporation, 2 Cir., 1937, 93 F.2d 469, 471. However, it may be observed that there is a difference between a person's liquor-peddling reputation and his debt-paying and his church-going reputations, and these, we trust, will be generally known by different people. The statute, subsection (b) (3), requires that inquiry as to a person's liquor reputation be made of a specified group, who would be most likely to know it. The inquirer can then insist that he be informed of the general reputation and not of chance reports to the informant. We do not think it was the intendment of this subsection to impose the duty of inquiry only when the person's reputation for illicit dealing in unlawful liquor transactions had achieved such a notoriety that it was known or should have been known by the claimant and others in ordinary business transactions. If such a situation had existed, claimant would have been barred by subsection (b) (2). Obviously, subsection (b) (3) was directed to reach a different situation." [2]

■■ The effect of the claimant's contentions is to say that duty to make inquiry under subsection (b) (3) is conditioned upon and requisite to an unfavorable report from the investigation it made. If this be so, subsection (b) (3), is nugatory because inquiry under (b) (3) could not exonerate it if it had knowledge of such unfavorable reputation before it was required to make inquiry under this subsection. It follows that knowledge of an unfavorable record or reputation would conflict with the requisite good-faith requirements under subsections (b) (1) and (2). Obviously all of the requirements under subsection (b) are accumulative and compliance with subdivision (1) or (2) does not avoid compliance with the third. In our opinion, the act does not admit of such a construction and would result in an undue burden on the claimant and would tend to confuse rather than clarify the definition of "reputation" as that term is to be applied. It is clear that inquiry at one of the places and from one of the officers enumerated in the statute would exonerate the claimant if it otherwise acted in good faith under subsections (b) (1) and (2); specifically in this case if the claimant had inquired of the Sheriff of Tulsa County, or the Chief of Police of the

---

2 See, also, United States v. Ford Truck, 3 Cir., 115 F.2d 864.

City of Tulsa before it purchased the paper, the reputation which Myers bore with the Alcohol Tax Unit would not prevent a remission.

■ This statute should be uniformly construed throughout the United States. It has a direct bearing upon trade and commerce and out of the confusion which has pervaded this field we must evolve a rule capable of universal application. If we adopt a rule which requires the prospective purchaser of commercial paper on automobiles to make inquiry of one of the officers enumerated in the statute in the designated locality, and to secure from him an "answer" that the purchaser of the automobile which is the subject of the commercial paper had no record or reputation for violating the liquor laws of the United States or any state, we will have established a simple practical and unburdensome rule to govern intercourse in this important field of commerce, and at the same time we will have adequately and efficiently protected the revenue laws of the United States against the "boot-leg" hazard. Indeed this purpose is manifest in the many adjudicated decisions indicating a rule of strict construction. See Federal Motor Finance v. United States, 8 Cir., 88 F.2d 90.

■ It is made plain that "reputation" within the context and meaning of (b) (3) is the reputation which the purchaser bears with the law enforcement officers in the community in which he resides and where the contract of purchase is made. The duty to make this inquiry is relieved only by the absence of the "reputation" with any of these officers in the event inquiry is not made. [3]

■ Myers, having a reputation with one of the enforcement officers enumerated in (b) (3) as contemplated by the act, and the claimant having failed to make the requisite inquiry, the lower court was powerless to grant the remission, and its finding that Myers had no such "reputation" as would require the claimant to make inquiry, was erroneous. The judgment of the lower court is reversed in accordance with the views herein expressed.

PHILLIPS, Circuit Judge (dissenting).

It was stipulated that Myers, prior to the purchase of the automobile, had a reputation with the Alcohol Tax Unit Agents of the Bureau of Internal Revenue, Tulsa, Oklahoma, for violating the laws of the United States relating to liquor. There was no other evidence tending to show that Myers had a reputation for violating the laws of the United States or of any state relating to liquor. From the stipulation it appears that the basis of the reputation with the agents was a prior arrest for a transaction which did not constitute a violation of federal law and a suspicion that Myers was engaged in the transportation of liquor into the state of Oklahoma contrary to law.

The specific question presented is whether these facts established a reputation within the meaning of 27 U.S.C.A. § 40a (b).

It is a well-settled rule of statutory construction that words in common use are to be given their ordinary and generally accepted meaning, unless it clearly appears that the legislature intended a different meaning. [1]

In Miller v. Robertson, 266 U.S. 243, 250, 45 S.Ct. 73, 69 L.Ed. 265, the court said:

"The words of a statute are to be read in their natural and ordinary sense, giving them a meaning to their full extent and capacity, unless some strong reason to the contrary appears."

In Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 213, 76 L.Ed. 484, the court said:

"The rule which should be applied is established by many decisions. 'The legislature must be presumed to use words in their known and ordinary signification.' Levy's Lessee v. McCartee, 6 Pet. 102, 110, 8 L.Ed. 334. 'The popular or received import of words furnishes the general rule for the interpretation of public laws.' Maillard

[3] See Universal Credit Co. v. United States, 4 Cir., 111 F.2d 764.

[1] Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L. Ed. 484; Woolford Realty Co. v. Rose, 286 U.S. 319, 327, 52 S.Ct. 568, 76 L. Ed. 1128; Lincoln v. Ricketts, 297 U.S. 373, 376, 56 S.Ct. 507, 80 L.Ed. 724; Miller v. Robertson, 266 U.S. 243, 250, 45 S.Ct. 73, 69 L.Ed. 265; Spano v. Western Fruit Growers, 10 Cir., 83 F.2d 150, 152; Von Weise v. Commissioner, 8 Cir., 69 F.2d 439, 441; Sanborn v. Commissioner, 8 Cir., 88 F.2d 134, 137.

v. Lawrence, 16 How. 251, 261, 14 L.Ed. 925."

The word "reputation" has a well known and ordinary signification. It is the repute in which a man is held by his neighbors or associates. [2]

In the statute the word "reputation" is unqualified. Had Congress intended it to mean reputation among law enforcing officers, it would have been a simple matter to have added the qualifying phrase "among law enforcing officers." Congress having omitted the qualification, I do not think we are justified in reading it into the statute.[3]

For the foregoing reasons, I am constrained to dissent.

---

[2] Ballentine's Law Dictionary, p. 1123; 2 Bouv. Law Dict., Unabridged, Rawle's Third Revision, p. 2903; Wigmore on Evidence, 3d Ed., Vol. III, § 692; Id., Vol. V, § 1615; 54 C.J., p. 688; United States v. One 1936 Model Chevrolet Pick-Up Truck, D.C.Tenn., 21 F.Supp. 165, 166; State v. Brown, 33 Utah 109, 93 P. 52, 53; Dave v. State, 22 Ala. 23, 39;

Commonwealth v. Webb, 252 Pa. 187, 195, 97 A. 189, 192.

[3] See United States v. C. I. T. Corporation, 2 Cir., 93 F.2d 469, 470, 471; United States v. One 1936 Model Ford V-8 De Luxe Coach, 307 U.S. 219, 225, 59 S.Ct. 861, 83 L.Ed. 1249; United States v. One Terraplane Sedan, D.C.N. Y., 23 F.Supp. 710, 712, 713.