UNITED STATES v. ONE 1940 FORD COACH AUTOMOBILE, MOTOR NO. 18–5885613.

No. 288.

District Court, W. D. Kentucky, Louisville Division.

Feb. 10, 1942.

J. Dudley Inman, Asst. Dist. Atty., of Louisville, Ky., for libelant.

Wilbur Fields and Lawrence G. Duncan, both of Louisville, Ky., for intervening petitioner.

MILLER, District Judge.

The United States of America filed its libel against a 1940 Ford Coach Automobile owned by John R. Ballard praying that said automobile be forfeited for a breach of the provisions of Section 3321, 26 U.S.C.A. Int.Rev.Code. The Universal Credit Company, which held a mortgage against the automobile, filed its intervening petition asking that the forfeiture be remitted to the extent of its lien interest in the car, as authorized by the Act of August 27, 1935, formerly carried as Section 40a, 27 U.S.C.A. and now carried as Section 646, 18 U.S.C.A.

On January 13th, 1941, Premier Motors, Inc., of Louisville, Kentucky, sold to John R. Ballard the Ford automobile in question for the sum of $998.00, of which Ballard paid $206.50 in cash. The unpaid balance was secured by a conditional sales contract calling for monthly payments of $30.56 each beginning February 13, 1941. On January 15, 1941, Universal Credit Company, the intervenor herein, purchased the lien note from Premier Motors, Inc. Payments on the note reduced it to the unpaid principal of $672.32. On March 29, 1941 Ballard was arrested at a filling station in Louisville, Kentucky, for transporting and concealing non-tax-paid whiskey. 15 gallons of such whiskey was found concealed in the car at the time of his arrest.

When the Universal Credit Company purchased the Ballard lien note it investigated his credit and employment record which it found to be satisfactory. He was an employee of ten years standing of the Standard Sanitary Manufacturing Company; had lived in the same neighborhood in Louisville for approximately ten years, and was well regarded by his neighbors. He had no reputation among his neighbors or in the community generally for having at any time violated the liquor laws of either the State or Federal Governments. He had been arrested and tried in 1938 in the Federal Court for violating the whiskey laws but was acquitted by a jury. Universal Credit Company made no inquiry at the Louisville office of the Alcohol Tax Unit or at any of the local law enforcement agencies. He had no record for violating the laws of the United States or of any State relating to liquor, but he did have a reputation at the Louisville office of the Alcohol Tax Unit for having participated in the illegal transportation of non-tax-paid whiskey from Nelson County to Louisville for a period of some three or more years.

 Section 646(a), 18 U.S.C.A. confers upon the District Court exclusive jurisdiction to remit or mitigate the forfeiture of an automobile used in transporting non-tax-paid whiskey with intent to defraud the United States of the tax. Section 646(b) provides that a lienor seeking remission, must satisfactorily meet three requirements before the Court may allow the claim, the third of which is to the effect that if the owner of the car has a record or reputation for violating laws of the United States or of any State relating to liquor the claimant must be informed in answer to his inquiry at the headquarters of the sheriff, chief of police, or principal internal-revenue officer engaged in the enforcement of the liquor laws, that such person had no such record or reputation. Although the Universal Credit Company made no inquiry at any of the law enforcement agencies referred to, yet this did not of itself defeat its right for remission. The lienor is not required by the statute to make inquiry of any one of the designated law enforcement agencies. If the purchaser has no record or reputation, failure to make the inquiry does not forfeit the rights of the lienor. But if the purchaser has either a record or a reputation, failure to make the inquiry provided by subsection b(3) of Section 646 bars the claim for remission, irrespective of compliance by the lienor with the provisions of subsections b(1) and b(2) of the statute. In failing to make such inquiry the lienor assumes the risk of the existence or nonexistence of a record or reputation on the part of the purchaser. Universal Credit Co. v. United States, 6 Cir., 91 F.2d 388, 389; United States v. C. I. T. Corporation, 2 Cir., 93 F.2d 469; United States v. One 1939 Model DeSoto Coupe, 10 Cir., 119 F.2d 516; United States v. Federal Credit Co., 5 Cir., 117 F.2d 341; United States v. O'Dea Finance Co., 8 Cir., 111 F.2d 358; United States v. One Hudson Coupe, 1938 Model, 4 Cir., 110 F.2d 300.

 In the present case Ballard had no record for violating the liquor laws. Any reputation which he had for being such a violator was among the agents of the Alcohol Tax Unit, and not among the members of his community generally. The question therefore is whether or not the term "reputation" as used in the statute means a general reputation in the community or also includes a localized reputation among certain law enforcement officers. The decision on this point should be largely controlled by keeping in mind the congressional intent in enacting the statute in question and the relationship to each other of subsections b(1), b(2) and b(3) of Section 646, 18 U.S.C.A. The statute was apparently enacted for the purpose of requiring finance companies to include the "bootleg hazard" as one aspect of the credit risk. See United States v. One Hudson Coupe, 1938 Model, 4 Cir., 110 F.2d 300, and references to Committee hearings and House Reports contained therein. Subsection b(2) of Section 646 requires as a condition precedent to remission that the lienor had at no time any knowledge or reason to believe that the automobile would be used in the violation of laws of the United States or of any State relating to liquor. This would seem to cover the case of general reputation in the community. If the word "reputation" as used in subsection b(3) meant general reputation it would appear to be unnecessary. I am accordingly of the opinion that it has a more narrow meaning and includes such a reputation as might exist with the various law enforcement agencies, even though such reputation was not general throughout the community. The lienor has not given full consideration to the bootleg hazard unless he has ascertained from one or more of the law enforcement agencies what they know about the purchaser's participation in the illegal whiskey traffic.

596

Such an inquiry should be necessary to give full effect to this intent of Congress. It requires very little effort on the part of the lienor to thus put himself in good standing; it works no hardship on the one who really wants to cooperate with the enforcement of the existing laws. If he fails to make the the designated inquiry, he assumes the risk. These views are in accord with two recent decisions from the Circuit Courts of Appeals of the 10th and 5th Circuits. United States v. One 1939 Model DeSoto Coupe, 10 Cir., 119 F.2d 516; United States v. McArthur, 5 Cir., 117 F.2d 343.

The intervenor relies upon the cases Universal Credit Company v. United States, 6 Cir., 91 F.2d 388 and United States v. C. I. T. Corporation, 2 Cir., 93 F.2d 469 as supporting its contention. There is some language in the opinion in the Universal Credit Company case from which a contrary ruling might be implied, but the decision itself does not support the intervenor's contention. In that case it was a conceded fact that the purchaser of the automobile had no record as a violator of the liquor laws and no reputation, either generally or with the law enforcement officers of being such a violator. I believe the language in the opinion relied upon by the intervenor was used with reference to the requirements imposed by subsection b(2) of Section 646 rather than with the requirements of subsection b(3). If this interpretation is correct both the decision and the language relied upon are inapplicable to the present case. The other case, involving the C. I. T. Corporation is closely in point, although the facts in that case do not appear as strong as the facts in the present case. There the Federal officers suspected the purchaser of violations of the liquor law and had been investigating him for a year past. The Court held this was not a reputation as provided by subsection b(3). The testimony of the enforcement officers in the present case went far beyond the stage of suspecting Ballard. A number of them testified that he had a very definite reputation among them for being such a violator. If the rulings do conflict, I feel constrained to follow the rule announced by the DeSoto and McArthur cases above referred to.

The forfeiture claimed by the libelant is granted and the intervening petition of Universal Credit Co. is dismissed. · Counsel will draft findings of fact and conclusions of law together with judgment in accordance with the views expressed in this opinion.