UNITED STATES v. ONE 1941 BUICK SPORT COUPE AUTOMOBILE, MOTOR NO. 54319518, et al.

No. 453.

District Court, D. Nebraska, Lincoln Division.

Oct. 17, 1946.

J. L. Brown, Asst. U. S. Atty., of Lincoln, Neb., for libelant.

Winfield M. Elmen, of Lincoln, Neb., for claimant.

DELEHANT, District Judge.

The automobile described in the caption was decreed in the present action to be forfeited, after seizure, for its use by one Marlon W. Glenn, its owner, in a violation on September 25, 1945, of the Liquor Enforcement Act of 1936, 27 U.S.C.A. §§ 221–228. The violation, which is admitted, consisted of the attempted transportation in the automobile from Nebraska into Kansas of a quantity of whiskey and gin. Glenn did not resist the forfeiture.

The claimant, holder of a chattel mortgage lien upon the vehicle, although it did not oppose the forfeiture generally, filed its petition for remission and mitigation, which the libelant resisted. Trial was had upon the issues thus made between the libelant and the claimant. The evidence included a stipulation between the contesting parties and oral testimony and documents. There is no real dispute of fact in the evidence except as it is reflected in the cross examination of two of the libelant's witnesses; but the parties do not agree upon its significance in the vital respect shortly to be discussed.

Glenn, a resident of McPherson, in McPherson County, Kansas, purchased the automobile on September 12, 1945, from Bethel Motor Company, of Wichita, in Sedgwick County, Kansas, a reputable dealer in motor vehicles, which took from Glenn a promissory note for $1,137.72, evidencing a substantial part of the purchase price, and his chattel mortgage upon the vehicle securing the payment of the note. The motor company, immediately, and within a day from their acquisition, sold the note and chattel mortgage to the claimant, a corporation dealing regularly in automobile loans, which purchased the paper in due course, for value and without notice of any infirmity in it. The debt, inclusive of interest, is wholly unpaid. In taking the paper, the claimant investigated the credit rating and general reputation of Glenn, but not his record or reputation in the matter of the violation of the liquor laws. Prior to September 25, 1945, it had no knowledge or information that did lead, or should have led, it to suspect Glenn of such violation or to suppose that he had either a record or a reputation for it. Not until long after September 25, 1945, in fact, after the institution of this suit, did the claimant make inquiry of any law enforcement official touching Glenn's reputation for violating liquor laws. Similarly, the motor company made no investigation at any time of Glenn's reputation in that behalf, and had no knowledge or information warranting the inference that he might have had a discreditable record or reputation upon the point.

The petition for remission and mitigation is tendered under Title 18 U.S.C.A. § 646, the material subsections (a) and (b) of which follow:

"(a) Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"(b) In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or

would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

The quoted language is a part of "An Act to repeal Titles I and II of the National Prohibition Act, to reenact certain provisions of Title II thereof," etc., approved August 27, 1935. 49 Stat. 872. The remission and mitigation contemplated by it, and the conditions imposed upon the relief, must be regarded in the light of the fact that, before the approval of the Act of August 27, 1935, forfeitures in the conditions presently existing were absolute and beyond the power of judicial mitigation or remission in favor of injured lien holders, whatever might have been the circumstances of the acquisition of their liens. United States v. One Ford Coupe, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025; United States v. One 1939 Model DeSoto Coupe, 10 Cir., 119 F.2d 516. Subsection (a), supra, conferred upon the courts a jurisdiction to remit or mitigate, but only within the narrow limitations of subsection (b). Federal Motor Finance v. United States, 8 Cir., 88 F.2d 90; United States v. O'Dea Finance Co., 8 Cir., 111 F.2d 358. The Congress, which had prescribed the earlier inflexible course of forfeiture, was clothed with the power to relax the rigor of its former legislation and to prescribe in whose favor and on what conditions its indulgence might be allowed. In the face of its action, the court may not inquire whether it has proceeded wisely, or even equitably, but may only interpret and apply the legislation as it has been approved by the Congress and the President.

The emphatic denial by Title 18 U.S.C.A. § 646(b) of judicial power to grant relief in default of the claimant's satisfaction of the prescribed conditions is not to be disregarded. It emphasizes the jurisdictional necessity that the claimant sustain the burden of proving in every case, the elements prescribed in subsection (1) and (2), and, in those cases within the significance of the conditional clause of subsection (3), the elements of inquiry therein required. The existence of that burden is unquestioned in the present case. Besides, it is recognized with practical unanimity in the various opinions applying the statute.

The claimant has sufficiently proved that it has a lien upon the forfeited vehicle, which is wholly unsatisfied, and was acquired by it in good faith; and that it had at no time any knowledge or reason to believe that the vehicle was being or would be used in the violation of laws of the United States or of any state relating to liquor. It has, therefore, fully met the requirements of subsections (1) and (2) of the cited statute. Nor does the libelant make any contention to the contrary.

The next and vital inquiry is whether, under the evidence adduced, the claimant is required, as a final condition to the grant of relief to it, to show its performance of the duty conditionally required by subsection (3). And the court is disposed to think that a claimant who has made the proof prescribed in subsections (1) and (2) need not show his compliance with the requirements of subsection (3) unless and until the libelant makes it satisfactorily to appear that the other "person" having a right under the claimant's contract (here, its mortgagor, Glenn) had, at the time

of the claimant's acquisition of the interest, "a record or reputation for violating laws of the United States or of any State relating to liquor." While the question is only incidentally argued in the briefs submitted by counsel, the court considers that the burden of establishing in the alternative either the "record" or the "reputation" mentioned in the statute rests upon the libelant. The plain language of the subsection leads to that conclusion, for the existence of such a record or reputation is expressly made a condition to the necessity of proof of the prescribed inquiry; and judicial opinion fortifies the thought. Pittsburgh Parking Garages v. United States, 3 Cir., 108 F.2d 35; United States v. One 1935 Chevrolet Coupe, D.C.Me., 13 F.Supp. 986; United States v. One 1936 Model Lafayette Coupe, D.C.Ky., 14 F. Supp. 1003; United States v. One Terraplane Sedan, D.C.N.Y., 23 F.Supp. 710; and United States v. One Studebaker Coach, D.C.Pa., 24 F.Supp. 76.

There was neither proof, nor attempted proof, of a record on Glenn's part of violating liquor laws. The element of record is, therefore, disregarded. The case turns on whether reputation, within the meaning of the statute, was established. The arguments of counsel in their briefs have been addressed principally to the true meaning of the word "reputation" as it is used in the statute. And the court has followed and carefully considered the argument, despite a conviction on its part that, in a realistic appraisal of the evidence received upon the trial, it is academic in the present case (vide infra).

For the claimant, it is contended that by "reputation," the Congress meant and intended the opinion which is shown by the evidence to be generally shared by those who are acquainted with the person under inquiry; or stated otherwise, the general reputation, if any, upon the subject of the violation of the liquor laws, of the person in the community in which he resides. For the libelant, it is insisted that, whatever other showings of reputation might also suffice, the required reputation is adequately established, if it be shown to exist with or among the officers in the locality of his residence charged with the enforcement of the law, and, particularly, that the libelant is not required to establish the existence of a general reputation in the community upon the point. Both reported opinions and the statute are instructive upon the issue. The decisions may not be said to be in strict harmony, although they reveal both a clearly preponderating view and a consistent trend in pattern.

The claimant relies principally upon United States v. C. I. T. Corporation, 2 Cir., 93 F.2d 469, 471, in which the writer of the opinion said:

"Here there was no record; the libelant does not allege that the pending investigation was such. Nor was there any reputation. Some of the officials—how many we do not know—had for long suspected Goldberg of breaking the liquor law, but that did not give him the reputation of doing so. Such inquiries are kept secret lest they come to the knowledge of the suspect and he become wary. The statute means not that, but reputation in the usual sense, a prevalent or common belief, a general name, the opinion of a number of persons, a more or less extended and public attribution of the crime, likely to be spread about so as to reach the seller. The knowledge of those charged with the duty of prosecuting Goldberg was not likely to do so."

The quoted text seems fairly to sustain the claimant's view. However, it may be observed that the cited decision rests ultimately upon the ground that the evidence disclosed no adverse reputation any where; that mere suspicion of violations of the liquor laws by an individual and his indecisive investigation, all on the part of the federal alcohol tax unit fall far short of establishing a reputation for such violation. In its insistence upon generality of reputation, the C. I. T. Corporation opinion is fortified by the somewhat earlier opinion in United States v. One 1936 Model Chevrolet Pick-up Truck, D.C.Tenn., 21 F.Supp. 165; and it was followed naturally and necessarily, in the later ruling in United States v. One Terraplane Sedan, D.C.N.Y., 23 F.Supp. 710. New York is within the second judicial circuit.

The weight of authority, however, inclines to a contrary ruling. In United States v. One Hudson Coupe, 1938 Model, 4 Cir., 110 F.2d 300, 303, the court says:

" * * * there is a difference between a person's liquor-peddling reputation and his debt-paying and his church-going reputations, and these, we trust, will be generally known by different people. The statute, subsection (b) (3), requires that inquiry as to a person's liquor reputation be made of a specified group, who would be most likely to know it. The inquirer can then insist that he be informed of the general reputation and not of chance reports to the informant. We do not think it was the intendment of this subsection to impose the duty of inquiry only when the person's reputation for illicit dealing in unlawful liquor transactions had achieved such a notoriety that it was known or should have been known by the claimant and others in ordinary business transactions. If such a situation had existed, claimant would have been barred by subsection (b) (2). Obviously, subsection (b) (3) was directed to reach a different situation."

Recognizing in the case last cited the possibly distinguishing presence of a "record," the opinion in United States v. Ford Truck, etc., 3 Cir., 115 F.2d 864, nevertheless, cites and follows the quoted discussion of the adequacy of reputation to put the claimant upon proof of the statutorily prescribed inquiry; and quotes approvingly the following reasoning from United States v. One Ford Coupe, D.C.Pa., 24 F.Supp. 74:

" 'The words "record" and "reputation" are given equal importance in the Act. The natural place to go for information about the existence of a record would be the enforcement officers. In fact, it would seem that the purpose was to relieve the claimant of the burdensome necessity of searching the court records of all the counties or federal districts in which the prospective purchaser had lived or been engaged in business. The same idea was undoubtedly in mind with regard to reputation. It is a lesser burden merely to inquire of these (law enforcement) officers than to trace a man's reputation through his various past activities, surroundings and domiciles. * * * The net result is that a finance company, in order to be safe, must inquire of the officers specified both as to record and reputation.' " [115 F.2d 865]

Finally, the third circuit court's opinion concludes:

"We are of the opinion that the 'reputation' of the statute is reputation among law enforcement officers, the duty having rested upon the claimant to make inquiry among such officers."

Then, in United States v. One 1939 Model DeSoto Coupe, 10 Cir., 119 F.2d 516, 520, the reported authorities on the question are collected and analyzed and the court's conclusion is summarily stated in this fashion:

"It is made plain that 'reputation' within the context and meaning of (b) (3) is the reputation which the purchaser bears with the law enforcement officers in the community in which he resides and where the contract of purchase is made. The duty to make this inquiry is relieved only by the absence of the 'reputation' with any of these officers in the event inquiry is not made."

The three opinions just considered, in which the Circuit Courts of Appeal for the fourth, third and tenth circuits have severally spoken, are singularly persuasive in one common characteristic. In each of them, reversal was ordered of a ruling by a district court which had followed the rule contended for in this action by the claimant, quite obviously in reliance upon the then recently published opinion of United States v. C. I. T. Corporation, supra. It is observed also, that a vigorous dissent was recorded in connection with the ruling in United States v. One 1939 Model DeSoto Coupe, supra. But that dissent serves, not to neutralize, but rather to emphasize, as maturely considered, the prevailing opinion. Of interest also is the well reasoned opinion of District Judge (now Circuit Judge) Miller, in United States v. One 1940 Ford Coach, D.C.Ky., 43 F.Supp. 593, in which the possible distinction of United States v. C. I. T. Corporation, supra, already noted is recognized and the reasoning of that case upon the necessity of gen-

eral community reputation is rejected. See also Pittsburgh Parking Garages v. United States, supra; United States v. McArthur, 5 Cir., 117 F.2d 343; and though not directly in point, as bearing upon the necessity for an inflexible administration of the pertinent statute, United States v. O'Dea Finance Co., 8 Cir., 111 F. 358, and Federal Motor Finance v. United States, 8 Cir., 88 F.2d 90.

■ To this court it appears to be manifest that the statute imposes the burden of inquiry upon an investor in automobile securities, if its prospective operating owner actually has, with the law enforcement officers in the community where he resides, a reputation for violating the liquor laws of the nation or of a state. The statute does not define or prescribe the agencies or social circles in which the unfavorable reputation must have found lodgment. Therefore, it would seem to be sufficient if it has reached the people who ought naturally to be aware of reputations of the sort that are involved; and those people are the administrators of the law enforcement agencies. That thought is confirmed by the statutory prescription of inquiry precisely through certain identified instances of those agencies. See quoted text of statute, supra.

Accordingly, the court declines to accept the view of the claimant that the automobile owner's adverse reputation required to put it upon the statutory inquiry must have permeated the consciousness of the general community in which he resides.

■ But, in either view of the social area into which the adverse reputation must be shown to have penetrated, the libelant has sustained such burden of proof as legally rests upon it. The sheriff of McPherson County, Kansas, and the chief of police of the city of McPherson were produced as witnesses. It is not seriously questioned by the claimant that they testified clearly and competently to the existence of such a reputation in their respective offices and with their respective staffs. Such testimony was given upon proper foundation. And the factors contributing to such a reputation among peace officers were narrated. Among them were reports from other law enforcement agencies; confidential statements that Glenn was a violator of the liquor laws, both in respect of importation of liquor into Kansas and in its local sale; the instability of his ostensible business operations; his lack of steady and industrious activity in contrast with his apparently comfortable living circumstances; his possession and handling of several motor vehicles and trucks, and the like. And, in response to questions upon cross examination seeking expressly to narrow this reputation to the company of peace officers, both witnesses, but more notably the sheriff, repelled that inference and attributed to it a generality of apprehension in his community. For example, the sheriff to a question by the claimant's counsel in the following language: "This existing attitude as to reputation towards Glenn was peculiar to the law enforcement officers at McPherson in your office, and it was more or less confined to that group of people?" replied as follows: "No, There was a number of people who seemed to know what his business was in that locality and that he was hauling liquor." So also, the chief of police stated that: "We had talked to too many people who seemed to know what they were talking about." And both of the officers testified, among other incidents, to the arrest of drunken persons, who attributed their source of alcoholic supply to Glenn; to statements of residents of the city that Glenn was selling liquor; to complaints and discussions by his immediate neighbors touching the heavy vehicular traffic and activity about his premises of a sort to raise an inference of illicit liquor handling. It is out of such incidents that reputation arises; and that is equally true, whether one considers it in relation to the general community of a party's residence, or in connection with the offices of law enforcement agencies, to which reputations for criminal conduct should, and naturally do, find their way. The court holds factually that the statutorily defined unfavorable reputation has been established, for all of the cited testimony is directed to dates prior to the claimant's acquisition of its lien.

The burden of inquiry within the requirement of the statute was thus placed upon

the claimant. And that burden was wholly unsatisfied. The only inquiry directed by, or in behalf of, claimant to any one of the designated agencies was made by a letter to one Dan Kane of the Federal Alcohol Tax unit at Topeka, Kansas, on January 18, 1946; to which a reply was made indicating that, as of that date, the Topeka office of the unit had no record of violation. Passing over a minor irregularity in the designation of Glenn in that correspondence, the court simply holds that the inquiry was wholly untimely and unavailing. The statute requires that it be made "before such claimant acquired his interest or such other person" (here, the owner, Glenn) "acquired his right under such contract or agreement, whichever occurred later." Both Glenn and the claimant acquired their respective interests not later than September 13, 1945. Inquiry of any sort deferred for more than four months thereafter and especially until after Glenn's apprehension in the unlawful employment of the vehicle, resulting in this proceeding, can not serve the claimant's purpose. United States v. O'Dea Finance Co., supra; United States v. One 1939 Model DeSoto Coupe, supra; United States v. National Discount Corporation, 7 Cir., 104 F.2d 611, 124 A.L.R. 283.

Remission and mitigation are, therefore, wholly denied.