218 F.2d 115
 UNITED STATES of America, Appellant,
v.
The CHIEFTAIN PONTIAC COMPANY and One 1950 Oldsmobile 4-door
Sedan, Motor No. 8A-402687H, Appellees.
 No. 4949.
 United States Court of Appeals Tenth Circuit.
 Dec. 21, 1954.
 
 H. Dale Cook, Asst. U.S. Atty., Guthrie, Okl. (Paul W. Cress, U.S. Atty., Perry, Okl., was with him on the brief), for appellant.
 Submitted by appellee.
 Before HUXMAN, MURRAH and PICKETT, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 On June 8, 1953, the United States instituted a libel against One 1950 Oldsmobile 4-Door Sedan which was sold to Jesse Nichols, whose real name was Henry James. The Chieftain Pontiac Company of Oklahoma City, Oklahoma, intervened, alleging that it held a conditional sales contract from Nichols upon which there was due the sum of $1,299.96, and that any forfeiture of the automobile should be remitted to the extent of the amount due.
 
 
 2
 The trial court found that the automobile was seized by investigators of the Alcohol and Tobacco Tax Division while in the possession of and being used by Henry James, and that the automobile was subject to forfeiture under 26 U.S.C.A. § 3720. The court further found that the intervenor had, through the General Motors Acceptance Corporation,[1] made the inquiry required by 26 U.S.C.A. § 3720 and ordered a remission of the forfeiture to the extent of the amount due the intervener. The United States has appealed.
 
 
 3
 S. L. Park, the dealer's relations manager of GMAC, testified that he made a routine investigation of the proposed purchaser and advised the intervener that the deal was all right and that there was no record. He testified that he had no particular recollection of the transaction but that GMAC files showed that the transaction came in with his name on it and the notation 'no record', and that he assumed that he must have had one of the eighty-two girls working in the office check by telephone with the Alcohol and Tobacco Tax Division about the record of Jesse Nichols, but that he did not know that any such call had been actually made.[2]
 
 
 4
 An investigator for the Alcohol and Tobacco Tax Division testified that a record was kept by that office of all telephone inquiries as to the record and reputation of any person for liquor law violations, and that the record did not disclose any inquiry by anyone as to Jesse Nichols on the date of the sale of the forfeited automobile, or immediately prior thereto. It was shown that Henry James and Jesse Nichols had a record and a reputation for liquor law violation with the Sheriff of Oklahoma County and the Chief of Police of Oklahoma City.
 
 
 5
 Under 18 U.S.C.A. § 3617, express provision is made for remission or mitigation of any vehicle forfeited under the Internal Revenue law. The conditions precedent to the allowance of a claim for remission or mitigation are that the claimant has an interest in the vehicle which he acquired in good faith; that he had no knowledge or reason to believe that it was being or would be used in the violation of any liquor laws of the United States or of any state; and that if it appeared that an interest asserted by the claimant is in any way subject to any contract or agreement under which any person having a record or reputation for violation of federal or state liquor laws has a right with respect to such vehicle, before the claimant acquired his interest, he be informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, or principal federal internal revenue officer that such other person had no such record or reputation. 18 U.S.C.A. § 3617(b). It is this latter statutory requirement that creates the issue in this case.
 
 
 6
 This statute has been interpreted many times by this and other courts. In United States v. One 1939 Model De Soto Coupe, 10 Cir., 119 F.2d 516, 520, this court, in speaking of the necessity of evolving a rule of construction of this statute which would be capable of universal application said: 'If we adopt a rule which requires the prospective purchaser of commercial paper on automobiles to make inquiry of one of the officers enumerated in the statute in the designated locality, and to secure from him an 'answer' that the purchaser of the automobile which is the subject of the commercial paper had no record or reputation for violating the liquor laws of the United States or any state, we will have established a simple practical and unburdensome rule to govern intercourse in this important field of commerce, and at the same time we will have adequately and efficiently protected the revenue laws of the United States against the 'boot-leg' hazard.'In United States v. One 1937 La Salle Sedan Automobile, 10 Cir., 116 F.2d 356, 358, it was said that, 'While the statute is remedial and should be liberally construed, the trial court has discretion to grant or refuse remission or mitigation only when the statutory conditions have been fulfilled.' This court has also held that the duty to make such inquiry is relieved only when it is shown that had inquiry been made, it would have disclosed that the one from whom the interest in the automobile was acquired had neither a 'record or reputation' with any of the designated officers. City Nat. Bank, Lawton, Okl. v. United States, 10 Cir., 207 F.2d 741; United States v. One 1949 Chevrolet Coach, 10 Cir., 200 F.2d 120; Aetna Finance Co. v. United States, 10 Cir., 191 F.2d 63; Interstate Securities Co. v. United States, 10 Cir., 151 F.2d 224; United States v. One 1939 Model De Soto Coupe, supra. However, where the claimant makes inquiry of any one of the designated officers and is advised that the purchaser or mortgagor had no such record or reputation, the inquiry is at an end and the claim should be granted, regardless of what the answer of the other officers might have been. City Nat. Bank, Lawton, Okl. v. United States, supra; Interstate Securities Co. v. United States, supra; United States v. One 1939 Model De Soto Coupe, supra. If he makes no inquiry as required by statute, he is bound by whatever answer would have been given by any of the designated law enforcement officers had inquiry been made. United States v. Drive New Cars, Inc., 10 Cir., 208 F.2d 774; Interstate Securities Co. v. United States, supra; United States v. One 1937 La Salle Sedan Automobile, supra.
 
 
 7
 As used in the statute, the words 'record and reputation' are words of different meaning and inquiry as to both must be made at the designated law enforcement offices. Inquiry as to only one will not authorize remission. United States v. Interstate Securities Co., 10 Cir., 218 F.2d 243; United States v. One 1950 Lincoln Sedan, 5 Cir., 196 F.2d 639; Manufacturers Acceptance Corp. v. United States, 6 Cir., 193 F.2d 622; United States v. Ford Truck, 3 Cir., 115 F.2d 864; Universal Credit Co. v. United States, 4 Cir., 111 F.2d 764. The claimant made no attempt to prove that it made inquiry of anyone concerning the mortgagor's reputation.
 
 
 8
 The burden of proving that the inquiry required by the statute was made is on the claimant. Aetna Finance Co. v. United States, supra; Murdock Acceptance Corp. v. United States, 5 Cir., 172 F.2d 552.
 
 
 9
 In the instant case, the claimant failed to establish by substantial evidence that it made the necessary inquiry of any of the three agencies about the mortgagor's reputation and record. It is admitted that no inquiries were made of the proper sheriff or chief of police. The claimant relies solely upon testimony by an employee of GMAC that in similar cases he always made inquiry at the Alcohol and Tobacco Tax Division, and that his records warranted his assuming that an inquiry had been made of that agency in this case. At most, his evidence shows only that some one must have made inquiry because there was a notation on the file of 'No record' which was admittedly not made by the witness. This was pure speculation. The records of the Alcohol and Tobacco Tax Division showed no inquiry as to either record or reputation. Under these circumstances, the claimant failed to sustain its burden of proving that it made the necessary inquiry. Murdock Acceptance Corp. v. United States, supra; United States v. One 1941 Model Ford Coach, 5 Cir., 138 F.2d 506; United States v. One 1937 La Salle Sedan Automobile, supra; United States v. Ford Truck, supra.
 
 
 10
 Reversed and remanded with instructions to disallow the claim for mitigation of forfeiture.
 
 
 
 [1]
 The GMAC carried the automobile paper for the intervener and upon request it customarily made the necessary investigation of the purchaser before the sale was made
 
 
 [2]
 Park testified as follows:
 'Q. (By the Court) What did you do in this case? That is the question that is before the Court. You stated to the Pontiac manager that he had no record. On what did you base that?-- A. I don't recall this exact case. Our files show that the deal came in with my name on it, 'approved by Park,' and no record. So naturally I assume that I checked with the Alcohol Tax Unit. However, the details are very vague because we were checking quite a few at that time.
 'Mr. Pugh: What we are trying to show by this witness-- he doesn't recall calling the Alcohol Tax Unit. What I wanted to show was that under circumstances similar to this, he always did call, but he has no independent recollection in this case except that there is a notation in his file of 'no record'. That is as far as we can go.
 'Q. (By the Court) On what information did you base your statement that there was no record?-- A. If I made that statement I based that on a telephone call my secretary made to the Alcohol Tax Unit. We only check with the ATU. We do not check with the local authorities.
 'Q. Did you know this man Nichols?-- A. No, sir, I did not.
 'Q. You didn't know any of the parties?-- A. No, sir. The only information I had was the customer's statement, and the credit information that was given to me over the telephone by Mr. Lewis.
 'Q. Have you talked to your secretary to see whether she made an investigation?-- A. Your Honor, I don't even know who my secretary was at that time. We have 82 girls working in our office, and as these things come up, if we are busy the first girl that walks by does the checking.
 'Q. Your statement then is you would not have put that 'no record' on there unless you had information from some proper authority that he had no record.-- A. That is right.
 'Q. That is about as strong as you can go.-- A. I don't recollect this individual case, but if I told Mr. Lewis there was no record I had checked because we don't take anything for granted, or we try not to.'