UNITED STATES of America,. Appellant,

v.

ONE 1958 PONTIAC SEDAN, Serial No. K 758 S 1399, Okemah National Bank, Okemah, Oklahoma, and Dorothy Reno Mogridge, Appellees.

No. 6983.

United States Court of Appeals Tenth Circuit.

Sept. 4, 1962.

---

9. This language shows that a person within the definition of a "contract carrier" cannot be a "private carrier."

894

Edwin Langley, U. S. Atty. (E. C. Nelson, Asst. U. S. Atty., on the brief), for appellant.

No appearance for appellees.

Before PICKETT, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

A libel of information was filed by the United States in the United States District Court for the Eastern District of Oklahoma against one 1958 Pontiac Sedan, Serial No. K 758 S 1399, in which a forfeiture is claimed under the provisions of 26 U.S.C. §§ 5205(a). (2), 5601(a) (12), 5604(a) (1), 7206(4), 7301 and 7302. Teddie Roosevelt Reno was convicted of federal liquor law violations, and at the time of his arrest was driving the respondent automobile in which was found non-taxpaid whiskey in unmarked one-gallon jars.

A response to the libel was filed by Dorothy Reno Mogridge, daughter of Teddie Reno, in which she alleges she was the owner of the car in question. A response was also filed by the appellee, Okemah National Bank, Okemah, Oklahoma, as a claimant under a chattel mortgage upon the car.

Teddie Reno arranged with the claimant bank for a loan, and used the proceeds of this loan together with a trade-in of another car to purchase the respondent automobile. The title to the car was assigned by the seller to Dorothy Reno Mogridge. Reno executed a note and chattel mortgage to the bank in the amount of $854.00 and advised the bank official that title to the car had been taken in his daughter's name. A few days later his daughter went to the bank and signed the note but did not sign the chattel mortgage for the reason that it had already been filed. The chattel mortgage in addition to the car in question covered farm machinery and livestock of Reno.

The evidence shows that the car was used by Dorothy Reno Mogridge and was kept at her house. Her father, Teddie R. Reno, from time to time would come to her house and use the car, and on one of such occasions the incident on which the libel was based occurred.

At the time the note and mortgage were executed by Reno to the claimant bank, Reno was a resident of Seminole County, Oklahoma, and had a reputation with the sheriff of the county as a liquor law violator. The claimant bank made no inquiry concerning the record and reputation as a liquor law violator of Teddie R. Reno nor of Dorothy Reno Mogridge. Dorothy Reno Mogridge had no such reputation with any officials as are enumerated in 18 U.S.C. § 3617. The bank official who handled the loan had no actual knowledge that Reno had a reputation as a liquor law violator, he did not know that the vehicle would be used in violation of the Internal Revenue Laws of the United States, and took the mortgage in good faith.

The trial court found that the actual owner of the car was Teddie R. Reno, and that the claimant Dorothy Reno Mogridge was not the owner. The court further found that by reason of the use

of the car for the transportation of non-taxpaid distilled spirits in violation of the Internal Revenue Laws of the United States, the car should be forfeited, but granted remission of it to the Okemah National Bank, the mortgagee.

The United States filed this appeal, and the question before this court is whether or not the claimant bank is entitled to remission of the car. The answer to this depends on whether the bank was required to make inquiry as to the reputation of Teddie R. Reno as a liquor law violator under 18 U.S.C. § 3617(b). The trial court apparently felt that the bank was not required to make any such inquiry because Reno was not named in the title assignment from the seller, although he was the actual owner of the car and the bank so regarded him. The interest of the bank was dependent upon the chattel mortgage executed only by Teddie R. Reno, who the trial court found was the actual owner of the car and to whom the bank looked for repayment. The result of the court's holding is that although the interest of the claimant bank was so derived, it did not have to make inquiry as to Reno because it could rely on his statement that the paper title was in his daughter. However the bank cannot so ignore the facts before it and use the statement of Reno that the car belonged to his daughter in order to avoid making inquiry of the proper officials. To hold otherwise would be to permit the claimant's interest to be established by deciding who was the *actual* owner of the car, but to decide whether the statutory inquiry had been made by using only the name appearing on the title documents, or to permit the claimant to rely only on what someone said the title document showed. This is not a consistent position on the facts nor is it in accord with the meaning and purpose of 18 U.S.C. § 3617. The statute is a remedial one and should be liberally construed, but the discretion only lies when the requirements of the statute have been met. United States v. One 1939 Model De Soto, 119 F.2d 516 (10th Cir.) ; United States v. One 1937 La Salle, 116 F.2d

356 (10th Cir.). Here the requirements as to inquiry were not met, and since the bank made no inquiry as to Reno it is bound by whatever answer would have been given. Interstate Securities Co. v. United States, 151 F.2d 224 (10th Cir.). The evidence shows, and the court found, that Reno did have a reputation as a violator with the Seminole county sheriff; consequently, this would have been the answer to an inquiry.

Thus the judgment of the trial court insofar as it orders remission is reversed